### J. C. ROBERTS v. BOWEN MANUFACTURING COMPANY.

(Filed 28 April, 1915.)

**1. Liens—Private Corporations—Laborers—Corporate Mortgages—Registration—Interpretation of Statutes.**

Revisal, sec. 1131, giving a lien by judgment upon the property or earnings of a private corporation to those performing labor, etc., superior to that of a mortgage, expressly refers to a mortgage given by the corporation itself, and not to mortgages on the corporate property acquired by a stranger and registered before the formation of the corporation.

**2. Statutes, Interpretation of—Ambiguity—Language Used—Legislative Intent—Public Policy—Power of Courts.**

A statute should be construed with reference to the whole or related subjects of other statutes of which it is a part, and when ambiguously expressed, the courts, in proper instances, may consider injurious consequences as affecting the public in its business; but where the statutes are consistently, plainly, and clearly expressed, no need for construction arises, it being within the province of the Legislature to declare the public policy of the State, and of the courts to construe the statute so as to give effect to the legislative intent as gathered from the language used.

**3. Same—Insolvent Corporations—Assets.**

Property acquired by a private corporation subject to a valid and registered mortgage does not become assets of the corporation except as subject to the prior lien; and the lien given to laborers on the assets of an insolvent corporation for work done under the conditions stated in Revisal, sec. 1206, cannot affect the vested rights obtained by the prior lien holders.

**4. Corporations—Receivers—Title—Prior Encumbrances.**

The title of a receiver of a private corporation to the corporate property relates back only to the time of his appointment, and it cannot divest the property of valid liens existing at that time.

**5. Same—Liens—Laborers—Mortgages—Registration.**

Where the receiver of a lumber manufacturing corporation enters into a contract with an individual to continue the manufacture of lumber, reserving title to the property as a guarantee that the latter will discharge his contractual obligations, and after registration of this contract another corporation is formed, to which the contract rights of the individual have been assigned, and the second corporation becoming insolvent, and a receiver being regularly appointed for it, the lien given by Revisal, sec. 1206, to laborers for an insolvent corporation will not be construed as superior to the rights of the receiver of the first corporation under his prior and registered contract.

APPEAL by J. C. Biggs, receiver, from *Allen, J.,* at March Term, 1915, of BLADEN.

On 29 December, 1913, the Newton-McArthur Lumber Company, a corporation, failed in business, was declared insolvent by the court, and J. C. Biggs appointed receiver of its assets in a proceeding under the statute. Through the receiver the said company entered into a contract with W. T. Bowen by which it agreed to sell to him, and he agreed to buy, cut, and manufacture, upon the terms and conditions therein specified, all the pine and other merchantable timber owned by it under contracts, deeds, and leases, in Bladen County. The timber was to be paid for at prices and at dates named in the contract, which was duly registered in said county in January, 1914. W. T. Bowen assigned his interest in the said contract to the Bowen Manufacturing Company, another corporation, on 2 March, 1914. It was also agreed in the Newton-McArthur Company contract with W. T. Bowen that the former should furnish to the latter, for the manufacture of said timber, its entire plant at or near Elizabethown, including sawmill, planing mill, and logging equipment, with all live stock and all buildings and real estate owned by it, excepting certain land, and all of its furniture and fixtures in the commissary and office, except the adding machine. This was done, and the property so furnished was delivered by W. T. Bowen to the Bowen Manufacturing Company when he sold his interest in the contract to the latter company. The Bowen Company, up to 15 August, 1914, had cut timber and manufactured the same into lumber, there being at that time on its yards 492,491 feet of lumber. On 2 September, 1914, the Bowen Company was declared insolvent, and J. A. Lyon appointed receiver of its assets. It then owed its employees and laborers for work and labor the sum of $3,400. These claims had been reduced to judgments, executions issued thereon and levies made upon its property and effects in August, 1914, before the receiver was appointed. The proceeding (*Harnett Lumber Co. et al v. Newton-McArthur Lumber Co.*) in which J. C. Biggs had been appointed receiver was transferred from Bladen to Cumberland County, and an order entered therein at September Term, 1914, restoring to him all the property left, which was covered by his contract with W. T. Bowen, with this exception: "It is

further ordered and decreed that the lumber on hand at the plant of the Newton-McArthur Lumber Company, which was manufactured by the Bowen Manufacturing Company, and which has heretofore been delivered to J. Alden Lyon, receiver of the Bowen Manufacturing Company, is excepted from the operation of this order, and the rights of J. Crawford Biggs, receiver of the Newton-McArthur Lumber Company, to said lumber or the proceeds arising therefrom is reserved for the further determination of the court."

The lumber on the yards at Elizabethtown was sold by J. A. Lyon, receiver, and he has in hand $4,200, and $700 owing to him for lumber sold, which is about all of the assets of the Bowen Company left, which will be insufficient to pay the claims of the employees and laborers and the claim of J. C. Biggs, receiver, under the contract with Bowen, which amounts to $2,188.85, it being due for lumber. The claims of the employees and laborers of the Bowen Company, amounting to $3,400, were for work and labor performed within sixty days prior to the appointment of J. A. Lyon as receiver of the Bowen Company, and within four weeks prior to the closing down of the plant by the Bowen Company in August, 1914. Three-fourths in value of the lumber on hand at the plant, and which was sold by J. A. Lyon, receiver, was manufactured prior to the time when said work was done and labor performed by the said claimants. It is stated in the case: "That J. C. Biggs, receiver of the Newton-McArthur Lumber Company, knew that W. T. Bowen had organized a corporation known as the Bowen Manufacturing Company, and that this corporation was operating the plant and cutting the timber covered by contract, Exhibit A, but he did not know of the arrangement or contract which W. T. Bowen had made with the Bowen Manufacturing Company for the operation of the plant." It was provided in the contract between the Newton-McArthur Company, by J. C. Biggs, receiver, and W. T. Bowen, that the former should have a lien on "all lumber on hand," and "all supplies, goods, and merchandise transferred by the contract," for the full performance of the same, and that it should stand as security therefor, and specially "for the payment of any amount due or to become due under the terms of the contract." As additional security, the title to all of the timber covered by the contract was retained by the Newton-McArthur Company until its stipulations were all fully performed, and it was further agreed that "the vendee, W. T. Bowen, should have no right to sell said standing timber, but only to cut and manufacture the same at the company's plant," except the oak and gum logs. W. T. Bowen gave a bond to the Newton-McArthur Company in the penalty of $10,000, conditioned for the payment of all sums due for timber cut by him and for the faithful performance of his contract with said company. There are other provisions in the contract, not necessary to be set out.

The court held and adjudged that the claims of the employees and laborers of the Bowen Manufacturing Company should be paid first, after the costs and expenses of the receivership of J. A. Lyon, and that the balance, if any, should be paid to J. C. Biggs, receiver of the Newton-McArthur Company, and from this judgment J. C. Biggs, receiver, and the Newton-McArthur Company appealed.

*Robinson & Lyon* for plaintiff.
*Sinclair, Dye & Ray and R. W. Winston* for defendant.

WALKER, J., after stating the case: The appellees, who are the claimants of the amounts due them from the Bowen Manufacturing Company for work and labor performed in cutting and manufacturing the timber into lumber, base their right to a preference in payment out of the funds over the Newton-McArthur Lumber Company and J. C. Biggs, its receiver, upon Revisal, secs. 1131 and 1206. The first of these sections provides as follows: "Mortgages of corporations upon their property or earnings, whether in bonds or otherwise, shall not have power to exempt the property or earnings of such corporations from execution for the satisfaction of any judgment obtained in courts of the State against such corporations for labor performed, nor torts committed by such corporations whereby any person is killed or any person or property injured, any clause or clauses in such mortgage to the contrary notwithstanding." It will be seen, at a glance, that this section refers to mortgages made by the corporation for which the labor was performed, and it says this in so many words. The substance of it, when properly analyzed, is that mortgages of *corporations* upon their property, etc., shall not exempt the property and earnings "of *such corporations*" from execution upon a judgment based upon labor performed for or torts committed by "*such corporations.*" It is too plain to require argument of the question that it refers only to mortgages made by the very corporations whose laborers have not been paid. That is not our case. It may be remarked here that every case in which the section has been successfully invoked to protect the claims of laborers from prior mortgages has been of that kind.

In reply to the contention of appellees, that section 1206 applies, the appellants say: This section does not apply in this case, in that the purpose of that section is to give the claims of employees of an insolvent corporation a first lien upon the assets of such corporations; and appellant insists that his interest in the lumber on hand is not an asset of the Bowen Manufacturing Company; that his interest therein is protected by his contract with Bowen, and that the manufactured lumber cannot be treated as an asset of the Bowen Manufacturing Company until the stumpage of appellant is deducted therefrom. The appellees'

claims are against the Bowen Manufacturing Company, and appellant's rights arise by virtue of his contract with Bowen, and whatever rights the Bowen Manufacturing Company acquired from Bowen are subordinate to the rights of the appellant under his contract with Bowen, and it would seem to follow logically that the rights of employees of the Bowen Manufacturing Company are subordinate to appellant's rights; it is clear that the employees of Bowen could not have priority under Revisal, sec. 1206, to the rights of appellant, as that statute is limited to employees of insolvent corporations, and where appellant, as receiver of the court, executes a contract with an individual, it cannot be that because the latter sees fit to organize a corporation to perform his contract with an officer of the court, the employees of the corporation which takes the assignment of the contract can come in ahead of the rights of the receiver, who likewise represents creditors, especially where the contract is duly recorded.

We think that this position is sound. Section 1206, so far as it has any bearing upon this case, is not substantially different from section 1131, as a proper consideration of its terms will show, except that it is not confined to prior mortgages and is different in respect to the time for which the "first and prior lien upon its assets" of its laborers is given retroactive operation. It provides for a lien, in favor of laborers and other employees, upon the assets of an insolvent corporation for wages due for work, labor performed, and services rendered within two months next preceding the date on which the proceedings to declare the corporation insolvent are commenced, "which lien shall be prior to all other liens that can or may be acquired upon or against *such* assets." It evidently has no application to a case of this kind, as there was no privity between the appellants and the Bowen Manufacturing Company, and they claim under a separate and independent lien, created some time prior to the formation of the Bowen Manufacturing Company, for which the appellees performed the work and labor, and by a contract, not between that company and appellees, but between the latter and W. T. Bowen, an individual. The lien covered by section 1206 is one which exists strictly against the assets of the insolvent corporation, and is preferred only to one acquired upon those *assets* by some one else, and not one acquired before the corporation was chartered and organized, and which arose out of dealings between entire strangers.

As between lienors, in respect to the assets of the insolvent corporation and whose liens rest specifically upon them as assets of the corporation, the laborer has the preference. We need not decide to what length this lien of the laborer may be extended and what particular liens will be subordinated to it. It is sufficient to say; in this case, that it does not overreach the appellant's lien.

While the case may not be directly in point, there is some analogy afforded by the reasoning in *McAdams v. Trust Co.,* 167 N. C., 494. We there said: "The work and labor was performed and the materials furnished by the plaintiff with full knowledge, in law, at least, and also in fact, of the prior mortgage. He must be presumed to have been able to take care of his own interests and to have contracted for a lien with reference merely to the equity of redemption and in subordination to the older encumbrance, of which he had full notice, and his case must now be judged by these considerations. The mortgagor could not give him a better right or title than he himself possessed at the time. As the work was commenced after the defendant's mortgage was registered, the lien of the plaintiff is subject to the prior lien of the mortgagee, and the court should have so declared."

Nor do we think the fact that the assets of the insolvent corporation are being administered by a court of equity can make any difference. The doctrine of *Fosdick v. Schall,* 99 U. S., 235, seems to be restricted to railroads and similar, or *quasi,* corporations. The weight of authority is that the rule applicable to railroad cases in regard to the displacement of the lien of a mortgage does not extend to private corporations. A full discussion, with citation of the authorities, will be found in *First National Bank v. Cook,* 2 L. R. A. (N. S.), p. 1012, and especially in an elaborate note at p. 1057. "Where the parties are all before the court, and do not object, and where it is necessary to put the property in a marketable shape, it seems that the court may authorize the payment of claims in preference to mortgage liens. But the weight of authority holds that it is not the province of a court of equity to undertake the management of a private business, and to create liens thereon, without the consent of the mortgagee, and that it cannot displace the lien of the mortgage where the mortgagee asserts an independent title under his instrument of mortgage giving him the right of possession." *Bank v. Cook, supra.* The Court said, regarding this question, in *Kneeland v. Am. L. and T. Co.,* 136 U. S., 97: "Upon these facts, we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens." "Where property comes into the hands of a receiver subject to preëxisting liens, it is as much his duty to preserve and protect such liens in favor of the holders thereof as it is to make a just distribution of the assets among the unsecured creditors." High on Receivers, sec. 138; *American T. and S. Bank v. McGettigan,* 152 Ind., 582. The title of a receiver

relates only to the time of his appointment, and valid liens existing at that time are not divested thereby. *Bank v. Bank,* 127 N. C., 433; *Pelletier v. Lumber Co.,* 123 N. C., 596; *Fisher v. Bank,* 132 N. C., 776; *Kneeland v. Loan and Trust Co., supra.* In *Int. Trust Co. v. Decker,* 152 Fed. Rep., 78, 11 L. R. A. (N. S.), the Court, quoting from *Trust Co. v. United Coal Co.,* 27 Col., 246, said: "We are of opinion that, in administering the affairs of an ordinary insolvent private business corporation for which a receiver has been appointed, a court of equity has not the power to authorize the receiver to incur indebtedness for carrying on the business, and to make the same a first and paramount lien upon the corpus of the property, superior to that of prior lien holders, without their consent." *Union Trust Co. v. S. S. and L. Co.,* 166 Fed., 193.

In construing a statute, where there is ambiguity in its words, we have the right to consider the unjust, and certainly the disastrous, consequences of a given meaning, and we will not so consider it as to impliedly impute to the Legislature any intention to do what is manifestly unjust, or to embarrass and hamper the public in its business dealings, unless such a construction is unavoidable by reason of the plainness of the language and the clearness of the meaning, that body being the only one to declare the public policy of the State, whether it be right or wrong, according to the view of the moralist. In doubtful cases we decide in favor of right and justice; but if the intent is plainly expressed it is to be followed without further inquiry. 2 Lewis's Sutherland on Stat. Constr., sec. 367 (238), pp. 702, 703. The courts have united in saying that if a construction of the statute in question must lead to absurd and mischievous consequences, it is inadmissible, if the statute is susceptible of another meaning by which such consequences can be avoided. This is not only a canon of construction adopted by the courts and text-writers, but it is, as well, the rule of common sense. But in applying this rule we must not forget or overlook the restriction of it within its proper limits, which has also been sanctioned, and a careful observance of which has been enjoined by the courts. This restriction is applicable to other canons of interpretation, and may be thus stated, following the lead of one of our highest courts: The spirit of the instrument, especially of the Constitution, is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words. It would be dangerous in the extreme to infer from extrinsic circumstances that a case for which the words of the instrument expressly provided shall be exempt from its operation. Where words conflict with each other, where the different clauses of the instrument bear upon each other, and would be inconsistent unless the natural and common import of the words be varied, construction becomes necessary; and to depart from the obvious

ROBERTS *v.* MANUFACTURING CO.

meaning of the words is justifiable. Yet in no case should the plain meaning of a provision, not contradicted or qualified by any other provision in the same instrument, be disregarded because we believe the framers of that instrument could not intend what they say. It must be one in which the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would, without hesitation, unite in rejecting the application. *Sturges v. Crowinshield,* 4 Wharton (N. S.), 202 (4 L. Ed., 529). It has been said that to authorize a departure from the literal construction, one of two things must be shown: either that there is some other part of the statute which cuts down or expands its meaning, or else that the provision itself is repugnant to the general purview. *Douglass v. Freeholders,* 38 N. J. L., 214; *Hyatt v. Taylor,* 42 N. Y., 262; *Gwynne v. Burwell,* 6 Bing. (N. C.), 559; Sutherland, p. 705, and note 45. We should also construe the entire statute, and keep in mind constantly that the general legislative intent is a key to its meaning, and a statute should be considered also as an entirety with reference to the whole system of which it is a part. Sutherland, secs. 348, 368, 369. If we apply these rules, it is not hard to determine that the Legislature did not intend to destroy vested rights of which the claimants had due and timely notice by registration of the contract, or to give a lien, when it would arbitrarily deprive another of his contractual rights, already fixed, as between him and another, who is not the corporation upon whose assets the lien can only rest. It would render uncertain the security of mortgagees and lien holders if we should uphold the asserted right of lien, and would consequently hamper and handicap investment of money in legitimate enterprises, which would entail more real loss to the laborer or lienor than of benefit he would derive from the other construction. If a lender of money, who takes a mortgage on land, will lose his lien if the mortgagee should sell the timber to a corporation, so that the latter can incur obligations to his employees and laborers, which must be paid before the mortgage debt, investors of money would become chary and would speedily withdraw from the market. This would entail serious consequences, and do more harm than good in our business affairs. The laborer is worthy of his hire, and should be paid, and preferred in payment, because of his dependence upon his daily wage, but we should be careful to see that, by mere construction of the statute, we do him no harm in the effort, inspired by our sense of right, to do him full justice.

The distribution, as ordered by the court, should have been reversed. The claim of J. C. Biggs, receiver of the Newton-McArthur Company, will be paid first, and then the costs and expenses of this proceeding, and the claims of the appellees in the order named.

Reversed.

HOKE, J., concurs in result.