Criminal action. Defendant was charged in the recorder's court with unlawfully selling wine, upon the following affidavit:
A. B. Breece, being duly sworn, complains and says, upon information and belief, that at and in said county, and in Rockfish Township, on or about 12 December, 1914, J. H. Johnson did unlawfully, willfully and feloniously violate the law by selling less than two gallons of intoxicating wine, to wit, one gallon to Charlie Perry, and said (687) Charlie Perry paid said J. H. Johnson $1.25 for same, contrary to the form of the statute and against the peace and dignity of the State.
A. B. BREECE.
Subscribed and sworn to before me, this 8 January, 1915.
 C. C. HOWARD, Clerk of the Recorder's Court.
Johnson was arrested under a warrant issued upon the affidavit and tried in the recorder's court, where he was convicted, and appealed to the Superior Court. *Page 773 
Chapter 125, Laws 1903, as amended by chapter 800, Laws 1905, and chapter 743, Laws 1907, is "An act to prohibit the manufacture and sale and the shipping into Cumberland County of spirituous, vinous, or malt liquors." Originally it prohibited the sale of less than five gallons of wine, but this was reduced by the act of 1905 to two gallons. Section 1 of the act reads as follows:
"That it shall be unlawful for any person, firm, or corporation to rectify, manufacture, sell, or otherwise dispose of, for gain, any spirituous, vinous, or malt liquors or intoxicating bitters within the county of Cumberland: Provided, that wines and ciders may be manufactured and sold on the premises where the fruit, grapes, or berries are grown, in packages containing not less that two gallons per package; but no wine or cider shall be drunk upon the premises where sold, nor shall the package containing the same be opened on said premises, nor shall it be lawful to sell any wine or cider to an unmarried infant."
The act prohibiting the manufacture and sale of intoxicating liquors in this State has a proviso which reads as follows: "Provided further, that wines and ciders may be manufactured or made from grapes, berries, or fruits, and wine sold at the place of manufacture only, and only in sealed or crated packages containing not less that two and a half gallons per package; but no wine, when sold, shall be drunk upon the premises where sold, nor shall the package containing the same be opened on said premises."
The repealing clause in the said act forbidding the manufacture and sale of intoxicating liquors in the State (sec. 7, ch. 71, Laws of Extra Session 1908), and the search and seizure act (sec. 8, ch. 44, Laws 1913), are the same, namely: "That all laws or parts of laws in conflict with this act be and the same are hereby, to the extent of such conflict, repealed: Provided, however, that nothing in this act shall operate to repeal any of the local or special acts of the General Assembly of North Carolina prohibiting the manufacture or sale or other disposition of any of the liquors mentioned in this act; but all such acts shall continue in full force and effect and in concurrence herewith; and indictment or prosecution may be had either under this act or any special or (688) local act relating to the same subject."
The latter act contains the following additional proviso: "Providedfurther, that this act shall not in any way repeal or modify chapter 71 of the Public Laws of North Carolina of the Extra Session of 1908."
The court charged the jury that the prohibition act of Cumberland County was repealed by the general law forbidding the sale of liquor in the State, and if the jury found that defendant had sold two gallons of wine, whether in one package or in two packages of one gallon each, they would return a verdict of guilty. Defendant admitted selling two *Page 774 
gallons, but in one package. The jury convicted him, and he appealed to this Court.
After stating the case: The defendant contends that the Cumberland act, as we will call it, was not repealed by the general prohibition law, because of the proviso which excepts it, with other similar and local statutes, from its operation; and, this being so, he could not be convicted under the charge as it was drawn under the Cumberland act, and not under the general State law. We do not so understand the affidavit. It charges him with unlawfully selling less than two gallons of intoxicating wine, that is, one gallon, to Charles Perry, for which he received $1.25, "contrary to the form of the statute and against the peace and dignity of the State." This concludes against any and every statute, especially those of a public and general nature, and the Cumberland statute is not mentioned. But if this were not so, it would be material only if the latter act had not been repealed by the general law, and he had sold not less than two gallons. We are of the opinion that there was such a repeal of the Cumberland act.
A general law will not be so construed as to repeal an existing particular or special law, unless it is plainly manifest from the terms of the general law that such was the intention of the lawmaking body. A general later affirmative law does not abrogate an earlier special one by mere implication. Having already given its attention to the particular subject, and provided for it, the Legislature is reasonably presumed not to intend to alter the special provision by a subsequent general enactment, unless that intention is manifested in explicit language, or there be something which shows that the attention of the Legislature had been turned to the special act, and that the general one was intended to embrace the special cases within the previous one, or something in the nature of the general one making it unlikely that an exception was intended as regards the special act. The general statute is read as (689) silently excluding from its operation the cases which have been provided for by the special one. The fact that the general act contains a clause repealing acts inconsistent with it does not diminish the force of this rule of construction. Endlich Int. Stat., 223 et seq.,Montford v. Allen, 111 Ga. 18.
But here there is a special reference to "local and special" statutes, relating to the sale of liquor, and for the reason that the Legislature intended to exclude the inference that by repealing all conflicting statutes *Page 775 
it was intended also to abrogate those which were in harmony with the purpose of the general law, and, therefore, could be enforced concurrently with it. There were many such laws, covering nearly the entire area of the State, such as local laws prohibiting the sale of liquor within certain distances of schoolhouses, churches, and other designated places, and also laws prohibiting the sale of liquors, excepting wine in quantities larger than two and one-half gallons, in certain counties or other localities of the State.
It will be seen that the proviso saves from the operation of the act only those local or special laws which prohibited the manufacture or sale, or other disposition, of any of the liquors mentioned in the body of the act, and not which permitted the sale in any quantity, by excepting wines in prescribed quantities; but it was thought wise and expedient, as a new policy of the State, to have a minimum quantity below which no wine should be sold, applicable to all parts of the State, except in those localities where a larger minimum was provided for, it being considered that as those local acts still further restricted the sale of liquor, it was consistent with the general plan of prohibition for them to remain in force and effect; and this same reason would, of course, apply where there was an absolute prohibition without any saving clause. This view is greatly strengthened, we think, by the words, "in concurrence herewith." The word "concurrent," in one or more of its senses, implies pursuit of the same course, or seeking the same objects; agreeing in the same act or opinion; contributing to the same event or effect, and Webster indorses these definitions.
Where wine was allowed to be sold in quantities less than two and one-half gallons it was certainly in disagreement with this new and general policy of the State as written into the prohibition act. In making the proviso to the repealing clause, the object was to advance the prohibition cause, and not to retard or obstruct its full and free action, or to impair its efficacy.
Counsel for defendant have argued in their brief that the Cumberland act was passed at an election in that county in 1902, when a large majority of votes was cast in its favor, and it, therefore, represents and expresses the popular sentiment of that locality, and that its provisions are more drastic than those of any general law, as it makes (690) the sale of liquor, contrary to its provisions, a felony, and prescribes severe punishment. As to the vote, it may be said, if this is a relevent [relevant] matter at all, that since 1902, that is, in 1908, the voters of the State by a large majority (44,000) approved the prohibition law, now chapter 71 of the Laws of 1908, and Cumberland County contributed to that majority 772 votes, the vote in that county being 1,524 in favor of the act and 952 against it. But we do not base our decision upon any *Page 776 
such ground, even if we are permitted to do so, but upon the broader and stronger reason that our construction of the two acts is consistent with the general policy of the State as declared in the prohibition law, and that it was evidently intended that all the acts upon this subject should be brought into one consistent and harmonious body of laws, so that they could be enforced together and without any conflict with the leading intent that there should be no sale under two and a half gallons.
This view of the statute is supported by the fact that the proviso excepts from the repealing clause only those "local and special" acts which prohibit the sale of liquor, and not those which permit it. The repealing clause referred to all acts in conflict with the provisions then being enacted into law. There were many acts of this kind, and the intention was to preserve those which absolutely prohibited the traffic, as being in accord with the general purpose of the new act, and to destroy those which, while they effected a partial prohibition, were at variance with it by reason of their exemption as to wine sold in less quantity than two and one-half gallons. The statutes which increased the minimum quantity of wine allowed to be sold on the premises by the manufacturer were really considered as virtually in harmony with the principle of the act, as under them those who sold less than two and a half gallons could be indicted. This reasoning leads to a conclusion, which is also strengthened by the further provision in the act, that where there is a sale of less than two and a half gallons, when there would be a violation both of the general law and of the acts just mentioned, the offender may be indicted under either law, whereas, if the Cumberland act is held to be in force, this provision of the act could not as well be enforced.
We admit the principle that general and special laws should stand together, if possible, the one as the general law of the land and the other as the law of the particular case, Hayes v. M. L., etc., R. Co.,117 La. 593; and that where there are two opposing acts or provisions, one of which is special and particular and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter, and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act, Woodworth v. Kalamazoo, 135 Mich. 233; S. v. (691) Sturgess, 9 Or. 537; but that is so where there is nothing else more controlling, as there is in this case. "The law requires that in the interpretation of a statute we should give it that meaning which is clearly expressed, and if there is doubt or ambiguity we should construe it so as to ascertain from its language what was the true intention of the Legislature." McLeod v. Comrs., 148 N.C. 85; Fortunev. Comrs., 140 N.C. 322; Abernathy v. Comrs., 169 N.C. 631. *Page 777 
The first canon in the construction of statutes is to ascertain the legislative intent, as gathered from the statute itself, which should be enforced accordingly as the only authentic expression of the popular will. We may consider other statutes relating to the same subject, and the purpose to be accomplished, where there is any real doubt as to the true meaning; but whenever and however discovered, the intent prevails over all other considerations.
The predominant idea here was to fix a general minimum of quantity, a standard for all, except where special acts provided for prohibition of the sale of wines altogether, or permitted a sale of a quantity equal to or more than that fixed by the general law, in which case the two classes of statutes could be enforced harmoniously, or concurrently, in furtherance of the common design. If this were not so, there would constantly be sales in many parts of the State contrary to the prohibition of the general act, which could not be punished under it. We should so construe this statute, if not in violation of the accepted rules, so as to subserve the clearly expressed purpose that there should be an end to sales in the State except under the restrictions imposed by it. It might greatly disappoint, if not defeat, its beneficent object should we do otherwise.
If a statute plainly expresses the legislative purpose and meaning on its face, it must be enforced exactly as it stands, and without any regard whatever to the results which will flow from it, and there is then said to be no reason for a construction of it; but if the language is ambiguous, or if it is fairly open to either of two constructions, the court may and should consider the effects and consequences which will follow from construing it in one way or in the other, and adopt that rendering of its meaning which will best tend to make the statute effectual and produce the most beneficial results; and this is the well recognized rule deducible from the authorities and stated by a standard text-writer almost literally, and certainly with substantial sameness, in the last edition of his work. Black on Interpretation of Laws (2 Ed.), p. 100. It is competent, therefore, in seeking for the real meaning, to consider the comparative operation of the statute under the one construction or under the other, and if one will defeat its purpose, or would result in actual mischief, or impair the principle which had come to be regarded as the settled policy of the State, or lead to consequences which would be so unreasonable as to be legally absurd, by contravening the general (692) and evident object to be attained by its adoption, while no such baneful result would be produced by the other construction, the Legislature must be supposed to have intended that the reasonable, effective, and beneficial interpretation of the statute should be applied to it, and the court will decide accordingly. Black, p. 101; Collins v. *Page 778 New Hampshire, 171 U.S. 30. Many cases in support of this position are collected in the note on page 101 of Black's Int. of Laws.
If we apply this rule and test of the law to the statute in question, we find no difficulty in adhering to the view previously expressed, that the sale in a less quantity than two and one-half gallons is forbidden, even though it was formerly allowed under some local statute. But we think the question has been virtually decided in S. v. Swink, 151 N.C. 726, where it was held that the Asheville local act prohibiting the sale of liquor in that city was repealed by the general statute of 1908.
It is argued by the defendant's counsel that the Swink case does not apply, because the Asheville statute is not local or special, within the intent of the proviso, while the Cumberland act is, because the latter is such a "local or special" statute as was contemplated; but this Court held in the case just cited that the law in regard to a sale in Asheville was such a local or special act, as it held it to have been repealed, and could not have so decided unless it was, and, therefore, was within the words of the proviso. A law is local when it pertains to a particular place or to a definite region or portion of space, or is restricted to one place, as, for instance, a local custom; and it is special when it is different from others of the same general kind or designed for a particular purpose, or is limited in range or confined to a prescribed field of action or operation; and so say the lexicographers. Webster defines a "local law" or "special statute" to be "an act of the Legislature which has reference to a particular person, place, or interest." This brings both the Asheville and the Cumberland statutes within the language of the proviso, and a decision upon the one must apply to the other.
The prohibition law was first drafted and adopted by the Legislature and then submitted to the people, who ratified it by a very large majority. It has generally been supposed to prohibit the sale of wine in any quantity less than two and one-half gallons. It appears that the people intended it to be so construed, and the object of all construction is to gather the intent from the statute and then to strictly enforce the popular will as thus expressed. One of the prime objects of government is to secure the health, happiness, and general welfare of the people; and so does our Constitution declare. Laws made to effectuate this purpose and to safeguard the home and the fireside against what was regarded as the intolerable evils of the liquor traffic, which had wrecked so many useful lives and wasted so much of the substance of the State, are (693) entitled to a construction which will prevent a recurrence of these misfortunes, especially when it is, as here, consistent with its language and the evident intent.
The jury returned a verdict of guilty, "but stated that they would not have found the defendant guilty except in deference to his Honor's *Page 779 
charge." It may be that they believed the Cumberland act was still in force, though the judge had said it was not, and they merely submitted to this ruling, and were right in doing so. The charge was an instructive one, not only stating the law correctly, but with clearness and accuracy, and giving sound reasons for it. If the defendant acted under a misapprehension as to the law, and honestly believed it was in force, and did not attempt to evade it, if it had been in force, by an indirect sale of a less quantity of wine than it authorized to be sold, he is most unfortunate, provided he was endeavoring, in good faith, to keep his promise to the court, when on his conviction at former terms of the court he agreed to be of good behavior, keep the peace, and not sell any more wine contrary to the law. The officers had pursued him for four years, garnered a "bunch of violations," several convictions following, defendant securing only onenol. pros. and one acquittal. If he had really reformed, and while he technically violated the law, he yet was trying to behave himself and lead a better life, we cannot help him, as we have no power to do so, but there is another department ordained by the Constitution to which he can appeal for clemency, where he will receive a just and merciful hearing.
There is no error in the record.
No error.
Cited: Bank v. Loven, 172 N.C. 670 (5b); Board of Agriculture v.Drainage District, 177 N.C. 226 (5g); S. v. Burnett, 184 N.C. 786 (3f);Felmet v. Comrs., 186 N.C. 252 (2g); Blair v. Comrs., 187 N.C. 490 (2g, 5g); Hunt v. Eure, 188 N.C. 719 (5g); Asheville v. Herbert, 190 N.C. 736
(2g); Ins. Co. v. Wade, 195 N.C. 425 (2g); Hagood v. Doughton, 195 N.C. 819
(5g); R. R. v. Gaston County, 200 N.C. 783 (2f); Hammond v. Charlotte,205 N.C. 472 (2g); Burt v. Biscoe, 209 N.C. 74 (5g); Rogers v. Davis,212 N.C. 36 (2g); S. v. Dixon, 215 N.C. 165 (6g); Charlotte v. Kavanaugh,221 N.C. 263 (2g); Valentine v. Gill, Comr. of Revenue, 223 N.C. 399 (5g);Power Co. v. Bowles, 229 N.C. 150 (2g).