This is an action instituted by the plaintiff against the defendant, the administratrix of J. G. Loven, to recover the amount of certain notes executed by J. L. Banner, as principal and indorsed by J. G. Loven. J. L. Banner, who had been discharged in bankruptcy and who was not a party to the action, had been charged by the plaintiff and had paid interest at the rate of 12 per cent per annum on account of the loan evidenced by the notes sued on, and during the courses of the dealings paid to the plaintiff on said loan the sum of $867.10 usurious interest.
The defendant prayed a forfeiture under the statute of the entire interest on the note, that the sum paid by J. L. Banner as interest be applied as a credit on the indebtedness, and a penalty in double the amount of the usurious interest paid, to be applied in discharge of the indebtedness, and the referee to whom the cause was referred and the court on exception to the report of the referee, sustained the contentions of the defendant, and, granting her prayer, discharged her from liability on the notes sued on, the payments made on the notes and the penalties allowed being more than sufficient to discharge the indebtedness.
Judgment was entered accordingly, and the plaintiff excepted and appealed.
This appeal involves the construction of the first proviso in section 1951 of the Revisal, which reads as follows: "That in ANY action brought in ANY court of competent jurisdiction to recover upon any such note or otherevidence of debt, it shall be lawful FOR THE PARTY AGAINST WHOM THE ACTION IS BROUGHT to plead as a counterclaim the penalty above provided for, towit, twice the amount of interest paid as aforesaid, and also theforfeiture of the entire interest." (Emphasis ours.) *Page 721 
The question arising under the proviso is whether the surety, who has paid nothing to the payee in a note, can, when sued on the note, avail himself, by way of defense or counterclaim, of the penalty of twice the amount of usurious interest paid by the principal in the note.
Considering the proviso alone, the first impression would naturally be that as a surety has paid nothing, he has no right of action against the payee, and as a counterclaim is in effect a cross action (Whedbee v.Leggett, 92 N.C. 469), and as the right given in the proviso to the party against whom the claim is brought is by way of counterclaim, that it was not intended to embrace the surety; but we cannot (668) deal with the proviso by itself, but must place it in its proper setting, knowing that frequently the historical development of legislation indicates clearly the public policy to be subserved, and leads to a correct understanding of the legislative mind and intent.
"We should also construe the entire statute, and keep in mind constantly that the general legislative intent is a key to its meaning, and a statute should be considered also as an entirely with reference to the whole system of which it is a part." Roberts v. Mfg. Co., 169 N.C. 34.
Let us then see what has been the public policy in reference to usury as shown by previous legislation.
"Anciently, in England, many doubts were entertained as to the propriety of taking a price or reward for the use of money, in foro conscientiae, and at one time it was held to be a misdemeanor and indictable as such, on the idea that it was an iniquity and criminal. Afterwards the taking of interest was impliedly authorized by 37 Hen. VIII., which fixed on 10 per cent as being the ultimate limit to which the lender might go, and by different enactments the rate was changed from time to time, until at last the legal rate was fixed at 5 per cent as the ultimatum, at which it has ever since stood and now stands, with a statutory declaration of invalidity of every contract or security tainted with usury and a qui tam action to any one who would sue for the same." Bank v. Lutterloh, 81 N.C. 146.
In the twelfth year of the reign of Queen Anne (1714) an act was adopted by Parliament on which the first act in North Carolina relating to usury was modeled (ch. 28, Laws 1741), the principal differences between the two being that the North Carolina statute increased the rate of interest in the English statute from 5 to 6 per cent, and decreased the penalty from treble to double the amount of money, etc., paid. See 39 Cyc., 890.
This act of 1741 provided that when a greater rate of interest than 6 per cent was charged, the contract should be utterly void, and that the party charging such rate should forfeit double the value of moneys, wares, merchandise, and other things so lent, bargained, exchanged, or *Page 722 
shifted, "one-half of which should belong to the State and the other halfto him or them that will sue for the same by action of debt." (Italics ours.)
This was reenacted in chapter 117 of the Revised Statutes and by chapter 114 of the Revised Code of 1856, and continued in force until chapter 24 of the Laws of 1865 and 1866.
This last act repeals chapter 114 of the Revised Code and enacts that 6 per cent shall be the legal rate of interest, with the right to stipulate on a loan of money for 8 per cent, and provides further that the (669) contract in any event shall be valid as to the principal sum, and that the only forfeiture shall be the interest on the plea of the borrower.
This last act was not changed until chapter 84 of the Laws of 1874 and 1875 was enacted. This act provided for a legal rate of interest at 6 per cent, and declared that when a greater rate was charged that the contract was void and that the lender would be guilty of a misdemeanor. It also provided for a forfeiture of double the value of the goods, money, etc., exchanged or lent to any one who should sue for the same.
This act continued in force until chapter 91 of the Laws of 1876 and 1877 was enacted. This last act recites that it is enacted because of a decision of the Supreme Court of North Carolina based on a decision of the Supreme Court of the United States deciding that the penalties imposed by the usury law then existing could not be enforced against National banks. This last act substantially readopted the law of 1865 and 1866, with a forfeiture of the interest and a remedy given to the party who had paid the usurious interest or his legal representative to recover back double the amount of the usury paid in an action of debt.
This last statute was reenacted in the Code of 1883 and is to be found in sections 3835 and 3836, and as amended by chapter 69 of the Laws of 1895, is now section 1951 of the Revisal, which, as material to this inquiry, reads as follow: "The taking, receiving, reserving, or charging a greater rate of interest than 6 per cent per annum, whether before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest which the note or other evidence of debt carries with it, or which has been paid, the person or his legal representatives or rate of interest has been paid, the person or his legal representatives or corporation by whom it has been paid may recover back twice the amount of interest paid, in an action in the nature of an action for debt: Provided, that in any action brought in any court of competent jurisdiction to recover upon any such note or other evidence of debt, it shall be lawful for the party against whom the action is brought to plead as a counterclaim the penalty above provided for, to wit, twice the amount of interest paid as aforesaid, and also the forfeiture of the entire interest." *Page 723 
It is thus seen that in England the taking of illegal interest was condemned, that the practice was regarded as hurtful to the State, and that the penalty was not given alone to the borrower, but to any one who would sue for the same, for the reason that as the borrower was under the control and domination of the lender, he frequently would not sue, and if the policy of the Government to prevent usury was to be maintained it was necessary that the right to sue should be by the popular or qui tam action.
It also appears that this policy was adopted in this State in (670) colonial days, that it was retained when North Carolina became a State, and that it was continued in force until 1866, a period of 125 years.
The act of 1865-66 marks a notable change in this policy growing out of the conditions existent just after the War Between the States, when there was little or no money in the State to be had at any price, and consequently the penalty was abolished, and the only forfeiture was of the interest.
In 1874-5 there was a return to the policy existing prior to 1866; the penalty of double the amount of money, etc., was restored, and was given to any one who would sue for the same.
Again there was a change by the act of 1876-7 which retained the penalty, but restricted the right of action to the party paying the usurious interest; but this change was not brought about because of any doubt as to the wisdom of the policy that had theretofore prevailed, but, as recited in the act, on account of a decision of the Supreme Court of the United States holding that the penalties could not be enforced against National banks.
It was under these conditions that the act of 1895 was passed, and if we follow the plain language of the statute it but confers on all who are sued on the usurious contract, principal and surety, the right of action that existed for more than a hundred years in favor of any one who would sue.
The statute says "in any action" brought "in any court" to recover on the usurious contract "the party against whom the action is brought" may plead "as a counterclaim the penalty above provided for, to wit, double theamount of interest paid."
The defendant, a surety, is one "against" whom the action is brought, and is within the language of the statute, and, when the policy of the State is considered, within its spirit, and the rule is, "If a statute plainly expresses the legislative purpose and meaning on its face, it must be enforced exactly as it stands, and without any regard whatever to the result which will flow from it; and there is then said to be no reason for a construction of it." S. v. Johnson, 170 N.C. 691. *Page 724 
This construction also confirms to the general principle that the surety is entitled to all the defenses of the principal debtor, and it is a necessary construction if the penalty is to be enforced, as otherwise the lender may collect usurious interest from the principal and then sue the surety alone and recover on the usurious contract the whole of the principal sum due.
Again, the General Assembly is presumed to have acted advisedly and with a knowledge of the meaning of language and of existing law (S. v. Lee, 164 N.C. 533), and it will never be assumed, if any other (671) conclusion is permissible, that it has done a vain and foolish thing; and if we were to adopt the construction contended for by the plaintiff and hold that the amendment of 1895 only confers the right on the party who has paid the usurious interest to plead the penalty, it gives no new right and is meaningless, because the penalty could be pleaded by him as a defense and a counterclaim before the act of 1895.Cobb v. Morgan, 83 N.C. 213.
The case of Meares v. Butler, 123 N.C. 206, throws no light on the construction of the statute, because, although decided after the amendment of 1895, it makes no reference to the change in the law, probably because the contract then before the Court was executed prior to the amendment.
We are therefore of opinion that his Honor gave a proper construction to the statute.
Affirmed.
Cited: Elliott v. Brady, 172 N.C. 829 (3p); Board of Agriculture v.Drainage District, 177 N.C. 226 (4c); R. R. v. Gaston County, 200 N.C. 783
(4c); Chozen Confections v. Johnson, 218 N.C. 502 (3c).