**ALLIED FIDELITY INSURANCE COMPANY, Appellant (Petitioner),**

v.

**ENVIRONMENTAL QUALITY COUNCIL and the Department of Environmental Quality, Appellees (Respondents),**

No. 86–259.

Supreme Court of Wyoming.

April 26, 1988.

Rehearing Denied June 2, 1988.

Raymond W. Martin of Godfrey, Sundahl & Jorgenson, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., for Environmental Quality Council.

John D. Erdmann, Sr. Asst. Atty. Gen., for Dept. of Environmental Quality.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

The Environmental Quality Council (EQC), the adjudicatory panel of the Department of Environmental Quality (DEQ), in performance of its reclamation responsibilities, denied a hearing request made by the surety when an insolvent operator ceased business and left uncompleted its statutory duty to reclaim mined land. The agency determined that the statute which provided a hearing right to the operator did not inure to the surety after the operator "bellied up." We reverse on a legal-subrogation theory.

At a time prior to 1981, DEQ issued to Ogle Petroleum, Inc., a Colorado corporation, mining permit No. 504 for which in July, 1980 Traveler's Indemnity Company issued a reclamation bond. This Ogle Petroleum, Inc. was dissolved in 1981. On July 22, 1982, appellant Allied Fidelity Insurance Co. (Allied) issued a performance bond of $441,005.00 to Ogle Petroleum, Inc. under the same permit to further assure reclamation funds for lands disrupted during mining. Although the permit was never transferred, the mining interests were assumed by Ogle Resources, Inc. (a Delaware corporation), and were further assigned to Ogle Petroleum, Inc. (reorganized as a Delaware corporation), and then to Ogle Petroleum, Inc. of California, a California corporation. The record does not clarify the relation of the dissolved Ogle Petroleum, Inc., the original Colorado corporation, to the second Ogle Petroleum, Inc., the Delaware corporation, or to Ogle Petroleum, Inc. of California. On November 6, 1985, Ogle Petroleum, Inc., of California notified DEQ that it was ceasing all operations. This finished the mining activity to which the reclamation obligations had attached. On that same day, the Attorney General notified the various entities of Ogle Petroleum, and the sureties, Traveler's Indemnity and Allied Fidelity, that Wyoming would seek forfeiture of both reclamation bonds. Ogle Petroleum, as defunct and disinterested, did not ask for a hearing. Allied asked to be heard at the EQC meet-

ing in which forfeiture of the reclamation bond would be considered. EQC denied Allied's hearing request and ordered its bond forfeited. Without the requested hearing, administrative action thus far has produced only Allied's appeal first to the district court and now here.

The dispositive appeal issue is stated by appellant as:[1]

"Is Wyoming statute § 35–11–421(b), W.S.1977, unconstitutional on its face since it does not provide a surety the right to a hearing prior to its bond being forfeited, or in the alternative, must the statute be construed to provide both the operator and the surety the right to a hearing prior to bond forfeiture?"

Section 35–11–421(b), W.S.1977 provides:

"The attorney general shall institute proceedings to forfeit the bond of any operator by providing written notice to the surety and to the operator that the bond will be forfeited unless the operator makes written demand to the council within thirty (30) days of his receipt of notice, requesting a hearing before the council. If no demand is made by the operator within thirty (30) days of his receipt of notice, then the council shall order the bond forfeited."

This is, at least to Wyoming, a case of first impression. The question before the court is whether § 35–11–421(b) must be read to bar a surety from stepping into the shoes of a defunct operator to request a forfeiture hearing. Under the facts of this case, we hold that the doctrine of legal subrogation will be expanded from our holding in *Commercial Union Insurance Co. v. Postin,* Wyo., 610 P.2d 984, 986 (1980), to permit a surety to replace a defunct operator to ask for a bond forfeiture hearing for the purpose of determining damages, if any, and to assert policy defenses. In so holding, we need not address the due-process challenge to § 35–11–421(b) under the Fourteenth Amendment to the United States Constitution and Art. 1, § 6 of the Wyoming Constitution.

Subrogation is defined in its conventional station:

"The substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. *Home Owners' Loan Corp. v. Baker,* 299 Mass. 158, 12 N.E.2d 199, 201 [(1937)]; *Gerken v. Davidson Grocery Co.,* 57 Idaho 670, 69 P.2d 122, 126 [(1937)]." Black's Law Dictionary (5th ed. 1979).

Stearns Law of Suretyship, § 7.1 at 200 (5th ed.). See also Arant on Suretyship § 79, The Surety's Right of Subrogation (1931). We extend these rights maintainable against third parties to the right to defend. See *People's Bank v. Loven,* 172 N.C. 666, 90 S.E. 948 (1916).

Our consideration begins with the right to judicial review of administrative actions. See *Walker v. Board of County Commissioners, Albany County,* Wyo., 644 P.2d 772, 774 (1982). "Actions of an administrative agent are not reviewable unless made so by statute." *Holding's Little America v. Board of County Commissioners of Laramie County,* Wyo., 670 P.2d 699, 702 (1983). " ' "Each statute must be carefully examined to discover the legislature's intent to restrict judicial review of administrative action." ' " *Walker v. Board of County Commissioners, Albany County,* supra, 644 P.2d at 774, quoting from *U.S. Steel Corporation v. Wyoming Environmental Quality Council,* Wyo., 575 P.2d 749, 750 (1978). This appeal requires the examination of two statutes: the judicial-review-of-agency-actions statute under the Wyoming Administrative Procedure Act, § 16–3–115, W.S.1977, and the judicial-review statute of the Wyoming Environmental Quality Act, § 35–11–101 et seq., W.S. 1977. An examination of the two statutes reveals no "clear and convincing evidence" of legislative intent to restrict access to judicial review. *U.S. Steel Corporation v.*

---

1. The adverse real-party-in-interest decision of the trial court was conceded correctly by appellees in their brief, and will not be considered as

a present issue here. *Erb v. Erb,* Wyo., 573 P.2d 849 (1978).

*Wyoming Environmental Quality Council,* supra. Finding no bar to judicial review of this agency action, the analysis proceeds to the agency decision itself.

"This court has consistently recognized the importance of administrative boards and their decisions." *Shenefield v. Sheridan County School District No. 1,* Wyo., 544 P.2d 870, 874 (1976). This is especially so for the Department of Environmental Quality, which is charged with the task of handing to successive Wyoming generations an environment as clean and safe as this generation received, in defense against the threat of chemical and radioactive pollutants which in an instant can destroy the environment for decades. This understanding strengthens our position often stated, that an "administrative decision is to be reversed only for errors of law." *Id.* at 874. The question of right to a hearing invokes an error-of-law consideration in both a statutory and constitutional sense. *Holding's Little America v. Board of County Commissioners of Laramie County,* supra; *J. Ray McDermott & Co. v. Hudson,* Wyo., 348 P.2d 73 (1960).

The State's posture is curious. Surely it cannot seriously anticipate ultimate payment without litigation if the surety denies an obligation to pay. We foresee either a hearing, as requested by appellant, conducted by the administrative agency which, in making a decision, creates the factual record, or in court, where liability will be decided between the surety and the beneficiary, changing DEQ from an administrative agency into a normal party litigant with jury-trial exposure. Otherwise the constitutional issue is clearly presented, and DEQ here will also have intentionally achieved the posture involuntarily effectuated by the Wyoming Highway Commission in *Brasel and Sims Construction Co., Inc. v. State Highway Commission of Wyoming,* Wyo., 655 P.2d 265 (1982), where right to adjudicate was denied, and then upon civil court trial, *State Highway Commission of Wyoming v. Brasel & Sims Construction Co., Inc.,* Wyo., 688 P.2d 871

(1984) resulted in an unfavorable judgment of $1,945,520.84. Whatever res judicata is occasioned by the requested administrative action, it would seem preferable to the agency than final disposition by civil lawsuit. It is a curious assumption by the agency that with liability apparently denied by the surety and total damages undemonstrated by the agency, that demand would be followed by unlitigated payment.[2] See Note, *Liability of Sureties—Extent to Which Liability Established Against Principal Determines the Liability of Surety,* 21 N.C.L. Rev. 310 (1943). See also *United States Fidelity & Guaranty Co. v. Town of Dothan,* 174 Ala. 480, 56 So. 953 (1911); *Greenwood v. Greenwood,* 44 Ga.App. 848, 163 S.E. 318 (1932); *Benson v. Alleman,* 220 Ia. 731, 263 N.W. 305 (1935); *Boylston Bottling Co. v. O'Neill,* 231 Mass. 498, 121 N.E. 411 (1919); *Randall v. Gunter,* 181 Miss. 332, 179 So. 362 (1938); *Chozen Confections, Inc. v. Johnson,* 221 N.C. 224, 19 S.E.2d 866 (1942).

From a categorical application of the statute, we understand how the agency concluded they could choose to deny a hearing to Allied. By name, the surety was not there.

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, we do not resort to rules of statutory construction. *Thomson v. Wyoming In-Stream Flow Committee,* Wyo., 651 P.2d 778 (1982). Neither this Court, nor the agency charged with administering the statute has a right to look for and impose another meaning." *Wyoming Insurance Department v. Avemco Insurance Co.,* Wyo., 726 P.2d 507, 510 (1986).

In the peculiar nature of this administrative issue presented, this opinion imposes onto the statute in question no new meaning. We only determine that because of the equitable doctrine of legal subrogation, the ability of the surety existed, under these facts, to step into the shoes of the

**2.** With Allied Insurance Company presently under insolvency liquidation in the state of Indiana, this present litigative activity may sustain more sound and fury than economic realism.

defunct operator. We assure its right to be heard in an administrative adjudication to contest the amount of legally guaranteed loss or to deny liability.

In *Commercial Union Insurance Co. v. Postin*, supra, 610 P.2d at 986, we said, "the right to legal subrogation occurs upon the payment of the debt by the subrogee for the subrogor." The equitable doctrine of legal subrogation is responsive to the demands of natural justice. "This doctrine is not dependent upon contract, nor upon privity between the parties; it is the creature of equity, and is founded upon principles of natural justice." *Federal Land Bank v. Joynes*, 179 Va. 394, 18 S.E.2d 917, 920 (1942). What is established here is the right in the administrative proceeding for the surety to defend in the name of the disingenuous principal in order to resist or determine the amount of obligation.

"The right of subrogation may arise and sometimes must arise from contract. This is conventional subrogation. The right is sometimes given in the absence of contract, is then a creation of the court of equity and is given when otherwise there would be a manifest failure of justice. This is legal subrogation. * * * This principle, adopted from the Roman law and at first sparingly exercised, has come to be one of the great principles of equity of our jurisprudence and courts incline to extend it rather than restrict it." *Wyoming Building & Loan Association v. Mills Construction Co.*, 38 Wyo. 515, 524, 269 P. 45, 48 (1928).

In expanding our holding from *Commercial Union Insurance Co. v. Postin*, supra, to allow a right by subrogation to deny liability prior to payment of the debt derived from guarantee, we approach the federal position assumed in *Allen v. See*, 196 F.2d 608, 610 (10th Cir.1952), "[t]he right to subrogation does not depend upon whether the surety pays the principal creditor before or after an adjudication in bankruptcy. In either event, he is entitled to subrogation."

" 'Subrogation not being a matter of strict right, but purely equitable in its nature, dependent upon the facts and circumstances of each particular case, no general rule can be laid down which will afford a test in all cases for its application.' " *Federal Land Bank v. Joynes*, supra, 18 S.E.2d at 920, quoting from 25 R.C.L. 1322, 1323.

The circumstances compelling application of equity lie in factual assertions of the appellant not comprehensively answered by appellees. Appellant contends that DEQ, Land Quality Division, prior to 1981, issued a permit to mine to Ogle Petroleum, Inc., a Colorado corporation. Because the permit (No. 504) was never transferred to any other corporation, only Ogle Petroleum, Inc., a Colorado corporation, was the permittee. The corporation was dissolved in 1981. Allied issued a reclamation performance bond to Ogle to cover the reclamation costs for mine permit No. 504. Appellant argues that Ogle Petroleum, Inc., a Colorado corporation, was the only entity bonded in obligation to provide the reclamation. Interesting issues of corporate and suretyship law sounding both in law and in fact are suggested. Noteworthy also is the unresolved determination of actual reclamation cost compared to the amount of obligation if the entire bond total may be encumbered. Since the Traveler's bond was paid to the agency and apparently spent, amounts of additional costs, incurred or conjectural, are not now established. *J.E. McCoy & Son v. Atkins*, 172 Ark. 365, 288 S.W. 886 (1926).

We express no disagreement with appellees "that the extinguishment of a right by the happening of a condition to which the right has always been subject is not a denial of due process." *Baton Rouge Rice Mill v. Fairbanks, Morse & Co., Inc.*, 164 La. 729, 114 So. 633 (1927), writ denied 278 U.S. 564, 49 S.Ct. 35, 73 L.Ed. 508 (1928). Surely, however, the surety in this case has the right to argue the condition asserted is not the condition to which the right has always been subject. Appellant argues it repeatedly asked DEQ for information about the status of its insured, without response until the State moved for bond forfeiture.

"Where a surety has guaranteed the collectibility of a principal's debt, the credi-

tor has the duty of giving the surety reasonable notice of his inability to enforce performance, and if such notice is not given, the surety is discharged to the extent of resulting prejudice." Restatement of the Law of Security, Surety and Creditor, Ch. 5, § 137, p. 369 (1941).

When the surety asks a state agency if, in the eyes of the state, there are any problems with the insured, and no response is made, there may be some resulting prejudice. By this statement, we invoke only an assumption of possible conflict of fact; resolution remains with the hearing tribunal.

It appears to us a manifest failure of justice under this circumstance to allow appellees to deny appellant's request for a hearing posited for it to deny liability, contest coverage, or ascertain damage. Res judicata is not supported by denying the surety his requested administrative hearing. *Speight Box & Panel Co. v. Ipock,* 217 N.C. 375, 8 S.E.2d 243 (1940); *State ex rel. Emsheimer v. Duggan,* 102 W.Va. 312, 135 S.E. 270 (1926).

Reversed and remanded for an administrative hearing.

THOMAS, J., filed a dissenting opinion.

THOMAS, Justice, dissenting.

I experience a two-fold disappointment in the opinion of the court in this case. First, I am disappointed by the necessity to assume that Allied Fidelity Insurance Company (Allied) is a subrogee, when the facts are contrary. Secondly, I am disappointed by the attempt of the majority to apply the law of subrogation to these facts. This creative jurisprudence might be understandable if there were some valid goal accomplished. I see none.

The majority quite correctly recognizes that the doctrine of legal subrogation is being expanded. It is expanded in much the same way that the vintage aircraft was expanded into the moonlander. The majority cites *Commercial Union Insurance Company v. Postin,* Wyo., 610 P.2d 984 (1980), in defining subrogation. That case is entirely consistent with the general rule that one becomes subrogated under the doctrine of legal or equitable subrogation upon the payment of the debt by the subrogee for the principal. See, e.g., *Martin v. National Surety Corporation,* 437 Pa. 159, 262 A.2d 672 (1970); *Walker Process*

*Equipment Company, Inc. v. Cooley Building Corporation,* 129 Vt. 333, 278 A.2d 714 (1971); 83 C.J.S. *Subrogation* § 57 at 694 (1953), and cases cited therein; 73 Am.Jur.2d *Subrogation* § 54 at 632 (1974), and cases cited therein. There is nothing in this record to indicate that Allied paid anything upon the obligation for which it served as surety, and, in the absence of payment, there was no subrogation.

The majority quotes the definition of subrogation from Black's Law Dictionary only in part, and a subsequent portion of that definition is consistent with the requirement of payment of the obligation. The definition goes on to say:

" * * * The lawful substitution of a third party in place of a party having a claim against another party. Insurance companies, guarantors and bonding companies generally have the right to step into the shoes of the party whom they compensate and sue any party whom the compensated party could have sued.

"The right of one who has paid an obligation which another should have paid to be indemnified by the other. Olin Corp. (Plastics Division) v. Workmen's Compensation Appeal Bd., 14 Pa.Cmwlth. 603, 324 A.2d 813, 816." Black's Law Dictionary 1279 (5th ed. 1969).

The only authority cited in justification of the extension of subrogation to a right to a hearing in this instance is *People's Bank v. Loven,* 172 N.C. 666, 90 S.E. 948 (1916). Properly analyzed, *People's Bank v. Loven,* supra, only holds that one who is sued as a surety (the endorser of a promissory note) fits within the language of a statute which provided:

" ' * * * [I]n any action brought in any court of competent jurisdiction to recover upon any such note or other evidence of debt, it shall be lawful for the party against whom the action is brought to plead as a counterclaim the penalty above provided for, to wit, twice the amount of interest paid as aforesaid, and also the forfeiture of the entire interest.' " *People's Bank v. Loven,* supra, 90 S.E.2d at 949.

The case simply holds then that the surety, by invoking the statute, demonstrated that the claim against the principal had been discharged. The case has nothing to do with the claim by Allied to a right to a hearing under the Wyoming statute.

I would have no quarrel with a conclusion that Allied, if sued by the State of

Wyoming, could invoke any defenses available to Ogle Petroleum, Inc. (Ogle). That is standard surety law. The majority, however, applies the law of subrogation backward. Once Allied pays the claim of the State of Wyoming, it will be subrogated to the extent of its payment to the right of the State to recover from Ogle. Having available a defense if sued, however, and being afforded an affirmative right by virtue of a subrogation theory is a clear mixture of apples and oranges. The latter right could be acquired by Allied upon an assignment of the permit, but nothing indicates that the right to a hearing was so important to Allied that it wanted to assume Ogle's other obligations under the permit.

The majority expresses concern with respect to the function of § 35–11–421, W.S. 1977. That statute authorizes the director of the Environmental Quality Council to request the attorney general to begin bond forfeiture proceedings. It then provides that he shall institute proceedings to forfeit the bond by "providing written notice to the surety and to the operator that the bond will be forfeited unless the operator makes written demand to the council within thirty (30) days after his receipt of notice, requesting a hearing before the Council." The statute obviously does not afford a right of hearing to the surety, but the majority is concerned about the potential of collateral estoppel. Correctly construed, that statute does nothing more than provide for the initiation of a claim by the State of Wyoming, which is not much different from the usual requirement of a declaration of a forfeiture when the obligations of a purchaser under a contract for deed have not been met. The Environmental Quality Council would not have any greater authority to adjudicate its claim of forfeiture than the State Highway Commission. *Brasel & Sims Construction Company, Inc. v. State Highway Commission of Wyoming*, Wyo., 655 P.2d 265 (1982). Consequently, there would be no effect of res judicata or collateral estoppel attaching to the administrative proceeding which really is nothing more than an invitation to the permittee to explain to the Environmental Quality Council why the forfeiture of the bond should not be pursued. I note that a subsequent provision in the statute provides for an action to recover the cost of the reclamation. While the tenor of the bond may not afford much in the way of a defense if the operator has not performed its obligations under its permit, it does not

appear to me that the statute is self-executing.

Consequently, there is no particular goal to be accomplished by insisting that the surety company have a right to a hearing under this statute when the statute does not so provide. Even after the hearing, there is no requirement that the surety pay over the amount of the bond, and, in every instance, litigation still would be a potential event.

The rule to be distilled from this majority opinion is that Allied is entitled to be subrogated to the right of Ogle to a hearing to attempt to justify no action to initiate the claim against Ogle, even though Allied must pay the claim on behalf of Ogle before it can be subrogated to the claim of the State against Ogle. I have to confess that the logic of this rule as a legal proposition escapes me. Its necessity is even more remote from my ken.

I dissent and would affirm the administrative agency in this instance.

## ORDER DENYING PETITION FOR REHEARING

Appellees Environmental Quality Council and the Department of Environmental Quality having filed with this Court their Petition for Rehearing together with Brief in Support of Petition for Rehearing, and the Court having reviewed the file and record of the Court, it is

ORDERED that Appellees' Petition for Rehearing be and it hereby is denied.

THOMAS, J., dissenting.

THOMAS, Justice, dissenting.

I would grant the Petition for Rehearing. One of the classic justifications for granting a petition for rehearing is a reasonable probability that the court may have arrived at an erroneous conclusion. *Elmer v. State*, Wyo., 466 P.2d 375 (1970), cert. denied 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82 (1970). In this instance, there is far more than a reasonable probability that the court may have arrived at an erroneous conclusion. In light of the rationale of the court's opinion, an erroneous conclusion is an absolute certainty as the Environmental Quality Council and the Department of Environmental Quality have pointed out in their Brief in Support of Petition for Rehearing. Whether the court's decision could be justified in any other way is problematical, but the invocation of the doctrine of subrogation constitutes a grievous error.