STATE BOARD OF AGRICULTURE v. WHITE OAK BUCKLE DRAINAGE DISTRICT.

(Filed 19 March, 1919.)

1. **Statutes— Interpretation— Repealing Statutes— Drainage District— Department of Agriculture—Moneys Advanced.**

Section 1, ch. 235, Public Laws of 1915, by repealing sec. 14, ch. 67, Public Laws of 1911, amendatory of ch. 442, Public Laws of 1909, providing among other things, for advancing moneys to the credit of the Department of Agriculture in the State Treasury to a drainage district formed under the acts, for compensation, etc., of the drainage surveyor, and its refund out of the future sale of the bonds to be issued by the drainage district, etc., construed with sec. 2 of ch. 235, Public Laws of 1915, requiring the Attorney-General, at the request of the Department of Agriculture to bring action against the commissioners of any such drainage district, and the bond of the petitioners for the district (sec. 2, ch. 442, Laws of 1909) that has failed to refund the money so advanced cannot be construed, by correct interpretation, to relieve a district formed under the statutes from refunding the money advanced, as provided by said sec. 14, ch. 67, Public Laws of 1911, before the enactment of the Laws of 1915, from the proceeds of the sale of the drainage bonds thereafter issued.

2. **Same—Primary and Secondary Liability.**

The liability of a drainage district to refund the moneys advanced by the State Treasurer to the credit of the State Board of Agriculture (sec. 14, ch. 67, Public Laws of 1911) for compensation, etc., of the drainage surveyor is primary and is not affected by the fact that the statute provides that suit may also be brought against the bond of the petitioners for the district. Sec. 2, ch. 442, Public Laws of 1909.

3. **Actions—Parties—Statutes—Interpretation—Department of Agriculture —Drainage Districts—Moneys Advanced.**

The State Department of Agriculture, where out of its funds the State Treasurer has advanced money for the compensation and expenses of the drainage surveyors, etc., under ch. 67, Laws of 1911, may maintain an action against the drainage district and its commissioners according to the method provided by the statute, the acceptance of the money by the drainage district under the law implying the promise to repay it; and the objection that the commissioners of the district had not authorized the transaction is untenable.

4. **Actions— Parties— Drainage Districts— Statutes— Refund of Moneys— State Treasurer—Motions—Supreme Court.**

In an action against the commissioners of a drainage district by the State Board of Agriculture (brought under ch. 236, Laws of 1909) to recover moneys advanced by the State Treasurer to a drainage district under sec. 14, ch. 67, Laws of 1911, the State Treasurer is a proper, if not a necessary party, and his motion made in the Supreme Court that he be made a party plaintiff is granted, the money sought to be recovered in the action, when paid into the State Treasury, to be held for the benefit of the other plaintiff and to be paid out as directed by the law.

ACTION, tried before *Allen, J.,* at January. Term, 1919, of WAKE.

The State Treasurer, on 25 March, 1912, paid out of the funds of the State Board of Agriculture the sum of $1,125.85 for the compensation and expenses of the drainage engineer of the defendant, the White Oak Buckle Drainage District, and his necessary assistants. The payment of this amount and the purpose for which it was paid are admitted. It is admitted further that the bonds issued by the district have been sold, and were sold 1 August, 1916. The district was organized under chapter 442, Public Laws of 1909; the engineer was appointed upon recommendation of the State Geologist, and the compensation of the engineer and his assistants and their expenses were paid out of the funds of the State Board of Agriculture under section 14, chapter 67 of the Public Laws of 1911, which reads as follows: "That the State Treasurer shall pay the compensation and expenses of the drainage engineer and his necessary assistants as provided in section 2 of chapter 442 of the Public Laws of 1909, according to an itemized statement approved by the clerk of the court to whom the petition for a drainage district was made and the State Geologist, upon warrant of the State Auditor, out of any money in the State Treasury to the credit of the Department of Agriculture: *Provided,* that said sum or sums shall be refunded to the State Treasurer to the credit of the Department of Agriculture by the petitioners for the drainage district if the drainage district is not established: *Provided further,* that if the drainage district is established said sum or sums shall be refunded to the State Treasurer to the credit of the Department of Agriculture out of the first moneys received from the sale of the bonds of said drainage district: *Provided,* that the total amount loaned by the State Treasury out of the funds to the credit of the Department of Agriculture for the purpose set forth in this section shall never exceed $15,000 at any one time: *Provided further,* that not more than $2,000 shall be advanced to any one district; and *Provided further,* that before any advancement is made for the purposes herein expressed the bond of the petitioners required by section 2 of said chapter shall be first approved by the Attorney-General."

It was contended on the argument that the plaintiff could not recover

(1) because section 14, chapter 67, Public Laws of 1911, was repealed by section 1, chapter 235, Public Laws of 1915; (2) because the money was not paid on the request of the commissioners of the drainage district, and has proved to be of no real practical benefit to the defendant.

The court was of the opinion, upon the facts, and so held, that the plaintiff was entitled to recover the amount claimed ($1,125.85), with interest from March, 1912, and rendered judgment accordingly. Defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for plaintiff.*

*C. D. Weeks and J. G. Mills for defendant.*

WALKER, J., after stating the case: While section 14, chapter 67, Public Laws of 1911, was repealed by section 1, chapter 235, Laws of 1915, the repealing act was not passed until after the money had been paid and the relation of debtor and creditor existed. Section 14 expressly provided for the refunding or repayment of the amount so paid, whether the district was finally established or not; if established, the amount should be repaid out of the proceeds of the sale of the bonds issued by the district.

The contention of the defendant is that the repeal of the section by chapter 235, Laws of 1915, canceled the obligation and destroyed the right of the plaintiff to enforce payment. That such was not the intention of the Legislature is clear from the words of section 2, chapter 235, Laws of 1915, as follows: "That upon request of the Department of Agriculture, the Attorney-General shall bring in the Superior Court of Wake County an action against the drainage commissioners of any drainage district that has failed, or may hereafter fail, to refund any money advanced by the State Treasurer under the provisions of section 14, chapter 67, of the Public Laws of 1911, the said action to be brought both against the board of drainage commissioners and the bond of the petitioners for the district required by section 2 of chapter 442 of the Public Laws of 1909."

The effect of the act of 1915 was to relieve the State Board of Agriculture of the burden of advancing money, which was imposed by the act of 1911; but clearly not to destroy the obligation of the debt theretofore contracted. *Blair v. Cookley,* 136 N. C., 405; *Kearney v. Vann,* 154 N. C., 311; *McLeod v. Board,* 148 N. C., 77; *Johnson v. Carson,* 161 N. C., 371; *Manly v. Abernathy,* 167 N. C., 220; *Nance v. So. R. Co.,* 149 N. C., 366; *Clements v. State,* 76 N. C., 199; *Woodley v. Bond,* 66 N. C., 396; *Caldwell v. Donoghey* (Ark.), 45 L. R. A. (N. S.), 721, and note.

Its operation is prospective in this respect, and was manifestly intended to be. This appears plainly from section 2 of the act of 1915, chapter 235, which directs the Attorney-General of the State to bring an action in Wake Superior Court against the drainage commissioners and the bondsmen, for the reason that if it was intended to cancel the indebtedness such a requirement would not have been made. It would be inconsistent with the defendant's construction of the act of 1915, that it destroyed the debt, if the Attorney-General is required to sue upon it at the request of the Department of Agriculture. How could he recover on a debt which had been forgiven and released to the defendants? A plaintiff cannot recover on a debt when there is no debt.

It is thus apparent that although section 14 of the act of 1911, ch. 67, which directed the payment of the money, was repealed, the Legislature preserved in section 2 of chapter 235 of the act of 1915, the right to sue for money already advanced under said act, and of course kept the debt alive for that purpose. The money paid by the Treasurer was paid under the provisions of the act of 1911 and before its repeal by the act of 1915. As the bonds of the district were not sold until August, 1916, the district having been established before the money was paid, it is doubtful if suit could have been instituted before August, 1916, the date of the sale of the bonds. The fact that the bond of the petitioners is equally liable to the plaintiff does not affect the primary liability of the drainage district and its commissioners. It was their duty, in any event, to have paid the advancement made by the plaintiff out of the bond money.

The defendants further contend that the plaintiffs cannot sue because they did not authorize the expense. The answer to this is, they organized the district under the act of 1909 as amended by the act of 1911. The act of 1909 provided for the appointment of the drainage engineer upon the recommendation of the State Geologist. This was done. The surveys and estimates and plans were made by him and his assistants, and the district established based upon these surveys and estimates. The district received the benefit of the expense; the statute directed these expenses as well as the compensation of the engineer and his assistants to be paid by the State Treasurer out of the funds of the plaintiff. The acceptance of the money advanced under the law involved the promise to repay, unless it was a mere gift or an appropriation. That it was such cannot be and is not claimed. The act under which it was paid expressly provided for its repayment by the district, and it was a liability also secured by the bond of those filing the petition for the creation of the district. Having received the money, the defendant cannot repudiate the obligation imposed by the statute to pay it back. If there was no practical benefit derived it was not the plaintiff's fault.

We have referred to the question of actual benefit, although there is no finding of fact and no assignment of error in regard to it, the single error alleged being that the court did not give proper force and effect to the repealing law.

We have reached our conclusion in accordance, as we think, with the principle which is stated in the defendants' brief, as to the interpretation of statutes, that "The law requires, in the interpretation of a statute, that we should give it that meaning which is clearly expressed; and if there is doubt or ambiguity we should construe it so as to ascertain from its language what was the true intention of the Legislature." *S. v. Johnson,* 170 N. C., 687, 691; *McLeod v. Comrs.,* 148 N. C., 85; *Fortune v. Comrs.,* 140 N. C., 322; *Abernathy v. Comrs.,* 169 N. C., 631; *S. v. Earnhardt,* 170 N. C., 725; *Peoples Bank v. Loven,* 172 N. C., 666.

The defendants' contention as to the meaning of the act of 1915 would require us to ignore section 2 of chapter 235, Laws of 1915, and confine our construction of the chapter to section 1, repealing section 14 of the Acts of 1911, chapter 67. This would violate the settled rule, as we are required to examine the entire statute to ascertain its meaning and to give force and effect to every part of it, reconciling, when reasonably possible, any seeming conflicts by comparing its sections and provisions with each other.

"It is not permissible, if it can be reasonably avoided, to put such a construction upon a law as will raise a conflict between different parts of it, but effect should be given to each and every clause and provision. But when there is no way of reconciling conflicting clauses of a statute and nothing to indicate which the Legislature regarded as of paramount importance, force should be given to those clauses which would make the statute in harmony with the other legislation on the same subject, and which would tend most completely to secure the rights of all persons affected by such legislation." Black's Interpretation of Laws (1896), p. 60, sec. 32.

And again: "Where two statutes on the same subject, or on related subjects, are apparently in conflict with each other they are to be reconciled, by construction, so far as may be, on any fair hypothesis, and validity and effect given to both, if this can be done without destroying the evident intent and meaning of the later act." *Ibid.; Bank v. Loven, supra.*

The Legislature undoubtedly intended to change its policy, but as clearly did it manifest the purpose to preserve existing debts and save to the plaintiffs the remedy for their enforcement, and this was a just and righteous purpose.

B. R. Lacy, Treasurer of the State, comes into this Court and asks to have himself made a party, as one of the plaintiffs, he agreeing to abide

by the proceedings and judgment. The request is granted, the Court being of the opinion that he is a proper if not a necessary party, and that his becoming a party will inure to the benefit and protection of the defendant, he being the receiving and disbursing officer of the fund recovered in this action under the statute in such cases made and provided. When paid into the State Treasury, the money will be held for the benefit of the other plaintiff and paid out as directed by law.

There is no error in the record.

Affirmed.