CAROLINA POWER & LIGHT CO. v. WILLIAM MURPHY BOWMAN, ET AL.

(Filed 10 December, 1947.)

**1. Registration § 1: Statutes § 12—**

The provision of G. S., 40-19, that copy of judgment in eminent domain proceedings be registered in the county where the land lies, and the provision of G. S., 1-228, that judgments in which transfer of title is declared shall be registered under the same rules prescribed for deeds, *held* superseded by the later enactment of Chap. 148, Public Laws of 1917 (G. S., 47-27), exempting decrees of courts of competent jurisdiction in condemnation proceedings from the requirement as to registration.

**2. Same—**

The proviso of Chap. 148, Public Laws of 1917, exempting decrees of condemnation from the requirement of registration *held* not repealed by the amendments of Chap. 107, Public Laws of 1919, and Chap. 750, Session Laws of 1943, and an easement created by judgment in condemnation proceedings is good as against creditors and purchasers for value from the owner of the servient tenement notwithstanding the absence of registration. G. S., 47-27; G. S., 47-18.

**3. Easements § 5—Whether structures erected by defendants constituted interference with plaintiff's easement for transmission line held for jury.**

Plaintiff is the owner of an easement, acquired by condemnation, 50 feet wide, for the purpose of erecting and maintaining electric power lines, with right of access for maintenance and inspection. The fee remained in the owner of the servient tenement for all purposes not inconsistent with the easement. Defendants are the purchasers for value of the fee. Plaintiff offered evidence that defendants had erected large permanent structures on the land, the top of one of such structures being within seven or eight feet of plaintiff's heavily charged transmission lines, creating a special hazard. *Held:* Plaintiff's evidence should have been submitted to the jury on the issue of whether the structures constitute an obstruction and interference to the exercise of plaintiff's easement.

SCHENCK, J., took no part in the consideration or decision of this case.

STACY, C. J., dissenting.

SEAWELL, J., concurs in dissent.

APPEAL by plaintiff from *Bone, J.,* at June Term, 1947, of ROBESON. Reversed.

Plaintiff instituted this action to enjoin defendants from maintaining obstructions in the form of substantial buildings on its right of way which it had acquired and used for the construction and maintenance of its electric power lines.

Plaintiff alleged that in 1912 the Yadkin River Power Co. acquired by judgment in condemnation proceedings under the statutes right of way 50 feet in width over lands of Rebecca Toon and Archie Ward, now

claimed by defendants, for the purpose of erecting and maintaining electric power lines, and that in 1926 by consolidation and merger all the rights and title of the Yadkin River Power Co. passed to the plaintiff. It was further alleged that upon and along this right of way were constructed and maintained by the plaintiff and its predecessor steel towers carrying wires charged with 110,000 volts of electricity by which power was and is transmitted for use over a large portion of the State, and that this use of the right of way has been continuous since 1912. Plaintiff alleged that in 1946 defendants erected on this right of way and underneath plaintiff's power wires in or near the City of Lumberton, a large building 35 x 95 feet and 25 feet high for use as a theater, the top of the building being within 7 or 8 feet of plaintiff's heavily charged transmission wires. It is also alleged that a dwelling house has been erected on plaintiff's right of way. These buildings are alleged to be obstructions and an interference inconsistent with plaintiff's easement, and to constitute a hazard both to those who use the buildings and to plaintiff's wires.

Defendants denied the buildings described interfered with any rights plaintiff may have in the premises or any covered by the judgment in the condemnation proceedings, or that they create any unusual hazard. Defendants further allege that they acquired fee simple title to the *locus* by *mesne* conveyances from Rebecca Toon and Archie Ward, and that the deed to the defendants, who were purchasers for value, was duly registered in 1946, and that the judgment in the condemnation proceedings under which plaintiff claims has never been registered in the office of Register of Deeds of Robeson County. Defendants allege title to the land covered by the building by adverse possession under color, freed from any dominant easement in favor of the plaintiff.

Plaintiff offered in evidence the judgment roll in the condemnation proceeding on file in the clerk's office and the final judgment therein recorded on the judgment docket, together with evidence of the erection, maintenance and continued use of towers and power lines along and upon the right of way so condemned since 1912. Evidence was also offered as to the size, height and use of defendants' buildings referred to, as they affected the inspection, maintenance and repair of plaintiff's lines and the creation of unusual hazards from proximity to the power lines, and as tending to show an interference with the exercise of the rights acquired by the condemnation proceedings.

At the conclusion of plaintiff's evidence, defendants' motion for judgment of nonsuit was allowed, and from judgment dismissing the action, plaintiff appealed.

*Varser, McIntyre & Henry and A. Y. Arledge for plaintiff, appellant.*
*McKinnon & Seawell and McLean & Stacy for defendants, appellees.*

DEVIN, J.  Two questions are raised by the appeal:

(1) Has the plaintiff an easement in the land now owned by defendants which the law will recognize and protect against invasion by the servient tenant?

(2) If so, does the erection and use of the buildings as described constitute an interference inconsistent with the rights acquired by plaintiff by condemnation?

1. It is not controverted that the condemnation proceedings under which the easement claimed was obtained were in all respects regular, and that whatever rights under that proceeding plaintiff's predecessor acquired have passed to the plaintiff.  The question raised relates primarily to the admitted fact that the judgment in the condemnation proceeding, though of record in the clerk's office, was not and has not been registered in the office of the Register of Deeds of the county.  It is also not denied that the defendants are purchasers for value, claiming by *mesne* conveyances from the original owners over whose land the right of way for the power lines was condemned, and that the present defendants' deed for the land covered by the obstructions complained of was duly registered in 1946.  This requires consideration of the applicable recording statutes.

The North Carolina recording statute, the Connor Act, declares among other things, that no conveyance of land shall be valid to pass any property as against creditors or purchasers for a valuable consideration but from the registration thereof in the county where the land lies, G. S., 47-18.

By Chapter 148, Public Laws 1917, it was provided: "that all persons, firms, or corporations now owning or hereafter acquiring any deed or agreement for rights of way and easements of any character whatsoever shall within ninety days after the ratification of this act record such deeds and agreements in the office of the register of deeds of the county where the land affected is situated. . . . Provided, however, that nothing in this act shall require the registration of the following classes of instruments or conveyances. . . . 3. It shall not apply to decrees of a competent court awarding condemnation or confirming reports of commissioners, when such decrees are on record in such courts."  The violation of the act was made a misdemeanor.  No deed for any of the land subject to plaintiff's easement was executed by the original servient owners, or registered, prior to the effective date of the Act of 1917.

By Chapter 107, Public Laws 1919, the Act of 1917 was amended by adding further provisions as to registration of "easements granted by said deeds and agreements" to be inserted in lines before and unaffecting the proviso exempting decrees of condemnation.  These Acts were codified as sec. 3316 in the Consolidated Statutes of 1919, in which appears the exemption quoted from the Act of 1917.

Chap. 750, Session Laws 1943, amended C. S., 3316, "relating to the registration of deeds and agreements for rights of way and easements," by striking out the provisions making violation a misdemeanor, and inserting in lieu thereof the following: "The failure of electric companies or power companies operating exclusively within this state or electric membership corporations, organized pursuant to Chap. 291, Public Laws of 1935, to record any deeds or agreements for rights of way acquired subsequent to 1935, shall not constitute any violation of any criminal law of the State of North Carolina. No deed, agreement for right of way, or easement of any character shall be valid as against any creditor or purchaser for a valuable consideration but from the registration thereof within the county where the land affected thereby lies." These statutes and amendments are brought forward in the General Statutes of 1943 as section 47-27, under the heading "Deeds of Easements," and in this section is incorporated the exemption from the requirement of registration, as declared in the Act of 1917.

Chapter 291, Public Laws 1935, now codified as G. S., 117-6 to 117-27, contains provisions for the organization of electric membership corporations under the North Carolina Rural Electrification Authority.

Under the statutes relating to eminent domain and the proceedings to acquire rights under the power thereby conferred, there is a provision that copy of the judgment shall be registered in the county where the land lies, G. S., 40-19; and in G. S., 1-228, it is provided that judgments in which the transfer of title is declared shall be registered under same rules prescribed for deeds. However, the subsequent Act of 1917 exempting decrees of courts of competent jurisdiction in condemnation proceedings from the requirement as to registration would seem to supersede these provisions with respect to this particular mode of acquiring title specified in the later acts.

After consideration of the statutes relating to registration as applicable to the facts of this case, we conclude that the amendment contained in the Act of 1943, which now appears as the last clause in G. S., 47-27, does not have the effect of repealing the provisions in the Act of 1917, brought forward in G. S., 47-27, declaring decrees in condemnation proceedings exempt from the requirement as to registration of deeds and agreements for easements and rights of way. The reason for the distinction is clear when it is remembered that proceedings for the condemnation of land are matters of public record in the office of the Clerk of the Superior Court, and that the judgment is there recorded and cross-indexed. See also *Whitehurst v. Abbott*, 225 N. C., 1, 33 S. E. (2d), 129. We think the plaintiff's easement and right of way described in the judgment in the condemnation proceeding for the purposes and to the extent therein set out, and for which the consideration fixed by law has been

paid, has not been lost or defeated by failure to record the judgment in the Register's office.

2. The judgment in the condemnation proceeding decreed to the original petitioner and its successors and assigns an easement and right of way across lands of respondents for the purpose of building and forever maintaining, inspecting and repairing its electric and telephone lines, with right of access for this purpose and to keep the right of way clear of trees and objects which might fall across its lines, but without interfering with defendants' rights except for the aforesaid purposes. This judgment also decreed that the defendants should have full power and right to use the lands over which right of way is condemned for any and all purposes not inconsistent with the easement of petitioner. To this judgment, on transfer to the Superior Court, the judge of that court added that defendants and their heirs and assigns should have right to use a portion of the land condemned for agricultural purposes when not necessary for the use of petitioner. Is there evidence of use by defendants of land subject to plaintiff's right of way inconsistent with plaintiff's easement? From an examination of the record it would seem that the evidence offered, when considered in the light most favorable for the plaintiff, tends to show that the defendants' use of the land in the erection and maintenance of the buildings complained of would constitute an obstruction and an interference with plaintiff's rights inconsistent with the easement acquired, and that the issues of fact raised by the pleadings and evidence should have been submitted to the jury.

The question which defendants sought to raise by their allegation of unencumbered title to the land by adverse possession under color is not presently presented on this record. Nor is it necessary to consider plaintiff's contentions as to *res judicata* and prescription.

W. W. Snow, lessee of the theater building, was at the instance of plaintiff made a party defendant and has answered. His rights as to the building, as well as those of the other parties to this action, must await final determination.

The judgment of nonsuit is set aside and the cause remanded to the Superior Court of Robeson County for trial.

Reversed.

SCHENCK, J., took no part in the consideration or decision of this case.

STACY, C. J., dissenting: Is the plaintiff's unregistered easement good as against the defendant purchaser for a valuable consideration? The trial court answered in the negative, and I agree with him.

It is provided by G. S., 1-228, that every judgment in which the transfer of title is declared, "shall be regarded as a deed of conveyance."

And in G. S., 40-19, it is further provided that judgments in condemnation proceedings "shall be registered in the county where the land is situated." Of course, the Connor Act, G. S., 47-18, also requires the registration of deeds of conveyance in the county where the land lies.

This was the law in 1912 when plaintiff's predecessor in title acquired the subject easement by judgment of record in the Superior Court of Robeson County.

In 1917, it was provided by Act of Assembly, Chap. 148, Public Laws —amended by Chap. 107, Public Laws 1919—that all persons, firms or corporations "now owning or hereafter acquiring" rights of way and easements of any character shall register the same "in the office of the register of deeds in the county where the land affected is situated"; exempting from its provisions, however, *inter alia*, court decrees in condemnation proceedings, "when such decrees are on record in such courts." Willful violation of this act was made a misdemeanor. These acts were · codified and brought forward in the Consolidated Statutes of 1919. C. S., 3316.

Then, in 1943, by Act of Assembly, Chap. 750, the penal provisions of this law were stricken out and the following inserted in lieu thereof :

"No deed, agreement for right of way, or easement of any character shall be valid as against any creditor or purchaser for a valuable consideration but from the registration thereof within the county where the land affected thereby lies."

It will be noted that this is the language of the Connor Act.

The defendant, who is a purchaser for a valuable consideration, acquired title to the property by deed dated 17 December, 1945, duly registered 29 January, 1946. This was after the Act of 1943. The judgment of condemnation, under which plaintiff claims, has never been registered in the office of the register of deeds of Robeson County.

If the requirements of registration, which existed when plaintiff's predecessor in title acquired the subject easement in 1912, were superseded by the provisions of the Act of 1917, as declared in the Court's opinion, then by the same token, it would seem that the exemptions in respect of registration set out in the Act of 1917, were superseded or at least modified by the amendment of 1943. Otherwise the paragraph above quoted has no meaning. Which takes precedence, the prior, or the subsequent, Act of Assembly?

Perhaps it is thought the doctrine of supersession has no application to an act which amends a subsisting statute and leaves the exemptions therein still standing. However this may be, the purpose of the 1943 amendment was to preserve the exemptions as between the original parties and to provide that thereafter easements created by court decree or otherwise should be valid as against creditors and purchasers for a

valuable consideration only from the registration thereof. Under this interpretation, which gives effect to each and every part of the statute, "no notice, however full and formal, will take the place of registration." *Turner v. Glenn,* 220 N. C., 620, 18 S. E. (2d), 197, and cases cited.

It is a cardinal principle, in the interpretation of statutes, that the intention of the law-making body is to be gathered from the entire enactment; effect is to be given to each and every clause and provision; and conflicts are to be avoided by reconciliation, if and when this appropriately can be done within the limits of judicial construction. *Board of Agriculture v. Drainage District,* 177 N. C., 222, 98 S. E., 597.

It seems to be intimated, though not quite said, in the majority opinion that the statute applies only to conventional easements. If this be intended, what becomes of the twice-repeated expression "or easement of any character"? And why exempt easements by court decree from the operation of a statute which has no application to such easements? The suggestion answers itself.

Finally, the judgment of the majority deletes the last paragraph of G. S., 47-27, from the statute, or renders it nugatory, and leaves the law in respect of registration of agreements for rights of way and easements of any character precisely as it was before this paragraph was added in 1943.

The fate of this last paragraph recalls *Justice Brown's* quotation in *Kornegay v. Goldsboro,* 180 N. C., 441, 105 S. E., 187, of the epitaph on the tombstone of a little child, which seems equally appropriate here:

> "If I am so soon done for,
>  What was I begun for?"

My vote is to sustain the trial court's interpretation of the statute.

SEAWELL, J., concurs in dissent.