CAROLINA POWER & LIGHT COMPANY v. WILLIAM MURPHY BOWMAN AND WIFE, BETTY B. BOWMAN, AND W. W. SNOW.

(Filed 7 January, 1949.)

**1. Easements § 5—**

In an action for mandatory injunction to remove a building from plaintiff's right of way, the burden is upon the plaintiff to show that the building erected on the right of way by the owners of the servient tenement constitutes an interference with the use and enjoyment of the easement.

**2. Same—**

As a general rule, the owner of the servient tenement has the right to use same for any purposes not inconsistent with the free use and enjoyment of the easement.

**3. Same—**

Where an easement is condemned for electric power transmission lines, the condemnor has the right, ordinarily, to the unobstructed use at all times of the servient land for the exercise of such rights as are necessary or incident to the enjoyment of the easement.

**4. Same—Evidence held to justify directed verdict that defendants' building constituted interference with plaintiff's easement for transmission lines.**

The decree in condemnation condemned a 50-foot right of way for electric transmission lines, and stipulated that the owners of the fee should have right of use for all purposes not inconsistent with the easement. Plaintiff's evidence disclosed that subsequent to the construction of its transmission lines, the owners of the servient tenement constructed a brick building covering almost the entire width of the right of way and extending upward within a few feet of the heavily charged transmission lines. Defendants' evidence tended to show that the transmission lines could be repaired and maintained over the building without serious difficulty, but that if plaintiff made proposed changes in its lines the presence of defendants' building would necessitate additional construction, labor and equipment. *Held:* Plaintiff was entitled upon the evidence to a directed verdict to the effect that the location of defendants' building constituted an interference with the exercise of plaintiff's easement, particularly in view of the provision of the decree of condemnation that the owners of the servient tenement should have the right and privilege to use the land for agricultural purposes, which would seem to exclude all other uses under the maxim *expressio unius est exclusio alterius.*

**5. Eminent Domain § 26—**

Where an easement for electric transmission lines has been condemned and compensation paid therefor, the decree has the effect of appropriating an easement for service to the public and withdrawing from the owner of the fee the right to any private use which would interfere with the public use, and mandatory or prohibitory injunction will lie to remove or prevent any encroachment upon the easement.

STACY, C. J., dissenting.

WINBORNE and SEAWELL, JJ., concur in dissent.

APPEAL by plaintiff from *Carr, J.,* March Term, 1948, of ROBESON. New trial.

This case was here at Fall Term, 1947, and is reported in 228 N. C. 319. The action was instituted to restrain the maintenance of obstructions on land upon and over which the plaintiff had acquired an easement by condemnation for the construction and operation of its electric power lines. It was alleged that the defendants had erected a permanent brick building, now used as a moving picture theater, on plaintiff's right of way in violation of its easement and constituting an interference inconsistent with its rights and its ability to operate, maintain, and repair its transmission lines. and creating hazards to plaintiff, defendants, and the public.

The defendants Bowman admitted the construction of the theater building as a permanent structure on the land described, but entered a general denial of plaintiff's allegations, and further denied that plaintiff had a valid easement as against defendants' fee simple title to the land, alleging specifically that at the time defendants took title to the land no easement thereon, by contract or condemnation, appeared of record in the office of the Register of Deeds of the county. The defendant Snow is lessee of the theater building and has no other interest in the controversy.

At the first trial, June Term, 1947, there was judgment of involuntary nonsuit, and plaintiff's appeal therefrom was heard at Fall Term, 1947, of this Court. It was determined on that appeal that plaintiff's easement was valid and subsisting, and that the condemnation proceedings and judgment of record in the Superior Court, under pertinent statutes, were not required to be recorded also in the Register's office, and that plaintiff's easement described in the judgment was not lost or defeated by subsequent conveyance from the original owners under whom defendants Bowman claim. The judgment of nonsuit was set aside and the cause remanded for the determination of issues of fact raised by the pleadings.

On the trial at March Term, 1948, the issue raised by the allegation in the complaint and denial in the answer was submitted to the jury as follows: "Does the erection and use of defendants' theater building con-

stitute an interference inconsistent with plaintiff's easement, as alleged in the complaint?" Other questions referred to in the pleadings were eliminated.

It was stipulated that plaintiff's predecessor in title, the Yadkin River Power Company, had condemned fifty feet in width over the land of defendants' grantors in a proceeding instituted and prosecuted to final judgment in the Superior Court of Robeson County in 1913, and that the defendants Bowman are the owners of the land subject to such rights as plaintiff has by virtue of the easement thereon. The judgment roll in that proceeding was offered in evidence. Therein the rights acquired upon payment of $500 compensation were described and defined as "right of way" across the lands of the defendants "for the purpose of building and forever maintaining, inspecting and keeping in repair its said lines for the transmission of electricity and its telephone lines, and the right of access along and upon said easement for its officers, agents and employees, and those of its successors and assigns, for the purpose of inspecting, repairing and maintaining said lines for transmitting electricity and its telephone lines, and to keep said easement and right of way and the land adjacent thereto cleared of all such trees and objects as might fall upon and across said lines. And, except for the purpose aforesaid, petitioner shall not interfere with the rights of the defendants; and the defendants shall have full power and right to use the land over which said easement and right of way is condemned for any and all purposes not inconsistent with said easement of petitioner, its successors and assigns." In the Superior Court at term time, to which the proceeding was removed, it was adjudged by consent that the final order of the Clerk be in all respects confirmed, with the following proviso: "Provided, that defendants and their heirs and assigns shall have the right and privilege to use a portion of the land condemned in this proceeding for agricultural purposes when not necessary for the use of the plaintiff."

Plaintiff offered evidence that the defendants had recently erected and now maintain on the 50-foot strip of land so condemned a brick building with concrete foundation, 35 feet wide, 95 feet long, and 20 or 25 feet high, immediately underneath plaintiff's power lines which carry 110,000 volts of electricity. The roof of the building is within approximately 10 feet of plaintiff's power lines, and metal vents extend above the roof within 8 feet and 4 inches of the wires. Four wires for the transmission of this electric current are strung from steel towers 350 feet apart and are and were suspended over this 50-foot right of way at the time of the erection of the building. The building covers all but a small portion of the width of the right of way for its entire length, and a smaller building is also on the right of way in rear of brick building. The brick building

was constructed for and is now in use as a moving picture theater with seating capacity of some 400. This evidence was uncontroverted.

Plaintiff also offered evidence from electrical experts and engineers that the height, size, and construction of this building on the right of way interfered with the inspection, maintenance and repair of plaintiff's power lines and prevented free access over and along the right of way for this purpose, particularly in case of injury to structures, and for the installing of new and larger conductors now in prospect incident to a new major steam electric power plant under construction near Lumberton. The building would also interfere with transportation and use of equipment and material for work on wires, insulators, conductors and towers.

The defendants offered an electrical engineer who described in some detail methods which in his opinion could be used without serious difficulty in making repairs by pulling the wires to one side and away from the building; though some difficulty would be presented it would not be insuperable; that in case the Light Company should decide to relocate some of its structures and desire to use the space occupied by the building, it would be in the way; and that in the delicate work of changing insulators, or in case lightning should strike, potential hazards to the power wires, the building, and those who might be therein would be occasioned. He testified in effect if it became necessary to change conductors for larger ones the building would interfere with the operation or necessitate additional construction. There was also testimony that if the transmission line came in contact with the building it would likely burn, and that due to the presence of the building on the right of way more labor and additional equipment might be required to make repairs; that electric wires are strung over buildings in Lumberton and other cities, though usually these are low voltage wires and do not carry 110,000 volts of electricity.

The defendants consented that the frame building referred to in the testimony as partly on the right of way be removed, having been put there by another without defendants' knowledge.

At the conclusion of the testimony the plaintiff moved the court upon the pleadings and evidence for a directed verdict in its favor upon the issue submitted, which motion was denied, and plaintiff excepted. Among other requests for instruction, the plaintiff asked the court to charge the jury as follows:

"The court charges you as a matter of law, under this contention (as to size, character and location of the building and its effect upon plaintiff's use of its easement), that the plaintiff is entitled to have the land within the boundaries of its right of way, and every part thereof, kept open and unobstructed by any structures of permanent nature, such as the building in question, so that plaintiff and its agents and employees may travel on foot and by vehicle upon and along said right of way as occasion may

arise, and for all purposes which are reasonably necessary now, or which may probably become necessary at any time in the future, in the inspection, repair, maintenance, or reconstruction and operation of its transmission lines, and I charge you gentlemen that if you should find from the evidence, and by its greater weight, that the said building is of such general character and is so located and maintained by defendants upon the plaintiff's easement, that it would constitute a use of the land inconsistent with the easement, it will be your duty to answer the issue yes. I further charge you that if you believe the evidence in respect to the nature, size, and location of said building, that you should answer the issue yes." This request for instruction was denied, and plaintiff excepted.

The jury answered the issue no, and from judgment on the verdict plaintiff appealed.

*Varser, McIntyre & Henry and A. Y. Arledge for plaintiff, appellant.*
*McKinnon & Seawell and McLean & Stacy for defendants, appellees.*

DEVIN, J. The former appeal in this case by the plaintiff was from a judgment of nonsuit. *Light Co. v. Bowman,* 228 N. C. 319, 45 S. E. (2) 531. The question then debated was whether plaintiff's easement acquired by judgment in condemnation proceeding was valid and subsisting as against subsequent purchasers from the original owners of the land. Consideration of pertinent recording statutes was involved. Plaintiff's rights under the condemnation decree were upheld, and the cause was remanded for determination of the issue raised by the defendants' general denial of plaintiff's action for mandatory injunction to remove obstructions on its right of way.

The burden was on the plaintiff to show that the building erected and maintained by defendants on the strip of land condemned for use by the plaintiff in the construction and continued operation of its electric power transmission lines constituted an interference inconsistent with plaintiff's easement.

The uncontroverted evidence disclosed that the defendants erected shortly before this suit was begun and now maintain on plaintiff's 50-foot right of way a substantial and permanent brick theater building 35 feet wide, 94 feet long, and 20 or 25 feet high, underneath plaintiff's electric power transmission lines carrying 110,000 volts, the top of the building coming within 10 feet of the wires thus charged. The wires supported by steel towers 350 feet apart are suspended over the building which covers almost the entire width of the right of way. Metal vents on the roof of this building reach within 8 feet, 4 inches of the wires. It was testified that due to its height, size, construction and location this building interfered with inspection, repair and maintenance of plaintiff's power lines.

It was also testified that plaintiff is building a major steam electric plant near Lumberton, and in connection with it expects to make changes in its power lines including that portion over defendants' building, and to install larger conductors and heavier wires, with which operations the building would interfere. Defendants' evidence tended to show methods by which ordinary repairs could be made and operations maintained on plaintiff's power lines without serious difficulty with the building as now located, though this might entail some additional equipment and labor, but it also appeared that for the purpose of and in making changes in its wires, conductors and installations the presence of defendants' building would necessitate additional construction, labor and equipment.

After careful consideration of the evidence adduced at the trial as it appears of record, we reach the conclusion that plaintiff was entitled to have the court charge the jury, as prayed, that upon all the evidence if found to be true as testified, they should answer the issue submitted in favor of the plaintiff. Plaintiff's prayer for instruction should have been given substantially as prayed. There was error in refusing plaintiff's prayer for which a new trial must be awarded.

The easement acquired by plaintiff is described and defined in the final judgment in the condemnation proceeding, and this was offered in evidence as the basis of plaintiff's action. By this decree plaintiff acquired the right of access along and upon a 50-foot strip of land described for the purpose of constructing, inspecting, repairing and maintaining its electric transmission lines, while the landowner retained the right to use the land so condemned for all purposes not inconsistent with the plaintiff's easement.

To draw a definite line between the reciprocal and oftentimes overlapping rights and obligations of the owners of the dominant and servient tenements in an easement is not always simple. But the general rule in regard to land condemned for use for electric power transmission lines seems to be that the landowner has the right to make use of the strip of land condemned in any manner which does not conflict with the rights of the Power Company, and which is not inconsistent with the use of the land for the purposes for which condemnation was allowed, and which does not interfere with the free exercise of the easement acquired. *Kesterson v. California-Oregon Power Co.,* 114 Oregon 22 ; *Alabama Power Co. v. Berry,* 222 Alabama 20 ; *Cantrell v. Appalachian Power Co.,* 148 Va. 431 ; *Aycock v. Houston Lighting & Power Co.,* 175 S. E. (2) 710 ; *Hastings v. Sou. Natural Gas Corp.,* 45 Ga. App. 774 ; *Patterson Orchard Co. v. Southwest Arkansas Utilities Corp.,* 179 Ark. 1029, 65 A. L. R. 1446 ; 30 C. J. S. 207, 209 ; 46 A. L. R. 1463 ; *R. R. v. McLean,* 158 N. C. 498, 74 S. E. 461 ; *Power Co. v. Wissler,* 160 N. C. 269, 76 S. E. 267 ; *Collins v. Alabama Power Co.,* 214 Ala. 643. Ordinarily the owner of

the dominant tenement has a right to the unobstructed use at all times of the servient land for the exercise of such rights as are necessary or incident to the enjoyment of the easement. 17 A. J. 1007. The principle is well stated in the recent case of *Alabama Power Co. v. Berry,* 222 Ala. 20: "The easement and servitude extend to all uses directly or incidentally conducive to the advancement of the purpose for which the right of way was acquired, and the owner retains merely the title in fee, carrying the right to make such use as in no way interferes with the full and free exercise of the easement."

The right of the landowner to erect and maintain a building on the right of way of an electric power company was decided adversely to the landowner in *Collins v. Power Co.,* 214 Ala. 643. There the landowner erected a 5-room house extending 15 feet over and upon the land covered by the Power Company's easement. The transmission line was suspended 25 feet above the building, capacity 44,000 volts. The Court said, "We think there can be no doubt that the dwelling house, resting in part upon complainant's right of way, is an obstruction such as complainant sought to guard against when it took a grant of its right of way from Evans." It was held the Power Company had right to have the building removed. And in *Kesterson v. California-Oregon Power Co.,* 114 Oregon 22, it was held that the piling of lumber 15 feet high on the Power Company's right of way was a wrongful invasion of the Power Company's easement; that while the owner of the land reserved the right to cultivate the right of way and otherwise use and enjoy it, the evident design of the instrument was to give the Power Company exclusive possession of the land except for cultivation, raising livestock, or possibly mining.

In *Patterson Orchard Co. v. Southwest Arkansas Utilities Corp.,* 179 Ark. 1029, it was held that by virtue of the decree of condemnation of a strip of plaintiff's land for erection and operation of electric power transmission lines, the Power Company was granted exclusive possession of the property to the extent such possession was necessary for this purpose, but the owner of the land also had right to possession subordinate to the paramount possession of the condemnor, and could lawfully exercise any and all rights except such as were inconsistent with and in interference with the easement granted.

In *Cantrell v. Appalachian Power Co.,* 148 Va. 431, 139 S. E. 247, the Court quoted with approval from 9 R. C. L. 784: "It is an established principle that the conveyance of an easement gives the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." And the Court also quoted from Curtis on the Law of Electricity that the Power Company "may make such use of the easement acquired as is necessary or convenient for the purpose for which it was acquired." In *Aycock v. Houston Lighting & Power Co.,* 175

S. W. 710, it was held the condemnor acquired such dominion over the land as is "proper and needful to carry out the purpose for which the land is taken," with right in the owner of the fee to use the property in a manner not inconsistent with the uses for which it was condemned.

It was suggested by the defendants in the case at bar that the language in which the easement is set out in the judgment here is sufficiently comprehensive to leave open as a question of fact whether any particular obstruction maintained on plaintiff's right of way by the defendants is inconsistent with the Power Company's easement. But we think the recital of the respective rights of the condemnor and the landowners stated in the judgment here are substantially similar to those considered by the Courts in the decisions examined, whether contained in decrees of condemnation or contracts and conveyances, and that the general principles herein stated are applicable to the language of the plaintiff's easement and the facts of this case.

Applying these principles of law with respect to the conflicting claims of the owners of the dominant and servient tenements in the use of a strip of land appropriated for the building and operation of an electric power transmission line, we think where pursuant to decree of condemnation the electric power company has erected steel towers and strung therefrom its wires carrying powerful electric current over and upon such strip of land for the purposes and public uses declared, the servient owner may not be permitted, against its protest and over its objection, to erect and maintain a large permanent building, covering almost the entire width of the right of way and extending upward within a few feet of the power charged wires, and that if these facts are properly made to appear from the evidence, this would constitute a use by the landowner inconsistent with the easement and an encroachment on the rights acquired. Such a building, so located, would seem, necessarily to interfere with the exercise of the plaintiff's "right of access upon and along said easement," for purposes incident to the maintenance of its electric power transmission lines. 28 C. J. S. 771.

Furthermore, considering the purpose for which the easement was acquired and the use of the land for stringing its overhead wires as contemplated by the Power Company, it is significant that in the final decree of condemnation in the Superior Court the original owners of the land, under whom the present defendants claim, consented to the incorporation in the judgment of the express declaration that the defendants should have the "right and privilege" to use the land condemned "for agricultural purposes," thus apparently indicating agreement that the effect of the decree was to divest them of all rights to use the 50-foot strip save in the cultivation of the surface, under the maxim *expressio unius est exclusio alterius.* Evidently the judgment did not contemplate the use by

the landowner of the airways in the zone occupied and to be occupied by the plaintiff's elevated power lines. Again, should the Power Company make any change in the location or structure of its towers, or raise or lower its wires, the presence of the brick building described would necessarily interfere with the plaintiff's use of the right of way it has acquired for that purpose.

Defendants call attention to the evidence that sometimes electric companies string their wires over buildings in the first instance, but in such case the distributor of electric current assumes the risk and undertakes the burden and increased difficulty of construction, inspection and maintenance, and usually such wires carry low voltage. But that is not our case. Here, the plaintiff acquired for its purposes the use of a strip of land unhampered by obstructions and has continued to enjoy that right until the erection of defendants' building.

When the servient owner of land subject to an easement for the construction over and upon it of electric power lines undertakes to erect, and does erect and maintain, a permanent building of the size, height, and dimensions shown by the uncontradicted evidence in this case, to hold the Power Company, the dominant owner, without adequate remedy to prevent this encroachment upon an easement lawfully acquired would seem to us create an unwise precedent. A high degree of care is required of those who handle and distribute electric current, the degree of care being that commensurate with the dangers reasonably to be apprehended from contact with so powerful and subtle an agency, and when a right has been conferred therefor its exercise in the interest of public safety and public service should not be hampered by permitting unreasonable encroachments upon or interference with the means and facilities it may lawfully use. *Calhoun v. Light Co.,* 216 N. C. 256, 4 S. E. (2) 858; *Arrington v. Pinetops,* 197 N. C. 433, 149 S. E. 549; *Helms v. Power Co.,* 192 N. C. 784, 136 S. E. 9; *Lawrence v. Power Co.,* 190 N. C. 664, 130 S. E. 735. Upon land now owned by the defendants the right to use a strip 50 feet wide in the erection, operation and maintenance of plaintiff's electric power transmission lines had been lawfully appropriated for a service to the public. G.S. 56-5; G.S. 40-1; *Wissler v. Power Co.,* 158 N. C. 465, 74 S. E. 460. Just compensation for the easement taken according to law was paid. This effected a withdrawal of the private use of this strip by the owner to the extent that such use by him would interfere with the public use. *Hastings v. Sou. Natural Gas Corp.,* 45 Ga. App. 774. And where a right of way or easement which has been acquired by a public service corporation for the purpose of enabling it to perform its duty to the public is invaded or its enjoyment interfered with a remedy by injunction mandatory or prohibitory is available. *R. R. v. Olive,* 142 N. C. 257 (264), 55 S. E. 263.

We conclude that the plaintiff was entitled to have the instructions substantially as prayed for given to the jury, and that there must be another trial for the proper determination of the facts from the evidence in accordance with the principles of law herein stated.

New trial.

STACY, C. J., dissenting: The case ought to turn on whether the trial court has followed our former opinion. Instead it has taken a reverse course on the second appeal.

The late Dean MacRae was wont to say to his classes, when some ambiguous answer was given, "You cannot ride two horses going in opposite directions at the same time." If the venerable dean were living today, he would doubtless erase this aphorism from his mind, for here the Court decides two ways in the same case. True, the majority says not, and uses many words to say it, but let us take a look at the record.

The case has been here before and the "law as previously established" has intervened with its binding effect, both on the parties and the Court. Whatever was decided on the first appeal is now *res judicata,* and, right or wrong, it bears the impress of finality. *George v. R. R.,* 210 N. C. 58, 185 S. E. 431; *Bank v. Furniture Co.,* 120 N. C. 475, 26 S. E. 927; *Hospital Asso. v. R. R.,* 157 N. C. 460, 73 S. E. 242; *Stanback v. Haywood,* 213 N. C. 535, 196 S. E. 844. "A decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal"—Headnote (6th), *Harrington v. Rawls,* 136 N. C. 65, 48 S. E. 57, cited with approval in numerous later cases, some of them collected in *Robinson v. McAlhaney,* 216 N. C. 674, 6 S. E. (2) 517.

Two questions were decided on the former appeal:

1. Is plaintiff's recorded but unregistered easement good as against a subsequent registered deed of a purchaser for a valuable consideration?

This question was answered in the affirmative by a divided Court. Nevertheless, it is the law of the case, and if the defendants had sought to relitigate the matter in the trial court they would have been met with a plea of *res judicata* and short shrift would have been made of their position. The only remedy open to them as against the ruling was a petition to rehear. *Pinnix v. Griffin,* 221 N. C. 348, 20 S. E. (2) 366. No doubt they were advised by counsel to accept the decision on the first question without further protest, largely because of the ruling on the second question, which follows:

2. "If so, does the erection of the buildings as described constitute an interference inconsistent with the rights acquired by plaintiff by condemnation?"

The plaintiff contended that a verdict should have been directed in its favor as there was no dispute in respect of the character and position of

the buildings erected by the defendants, and that this Court should accordingly instruct the trial court to direct such a verdict. Plaintiff's position was not adopted on the former appeal. Contrariwise, the second question was answered without division of opinion or dissent in the following language: "Is there evidence of use by defendants of land subject to plaintiff's right of way inconsistent with plaintiff's easement?" From an examination of the record it would seem that the evidence offered, *when considered in the light most favorable for the plaintiff*, tends to show that the defendants' use of the land in the erection and maintenance of the buildings complained of would constitute an obstruction and an interference with plaintiff's rights inconsistent with the easement acquired, *and that the issues of fact raised by the pleadings and evidence should have been submitted to the jury* (italics added).

When the case came on for another hearing at the March Term, 1948, Robeson Superior Court, the plaintiff offered three expert electrical engineers who testified that the presence of the theater building, in the first place, "would interfere with the ordinary acts of maintaining, repairing and keeping the power line in operation"; secondly, "would increase the hazards," and constitute "an obstruction to the maintenance and repair of these lines," and, thirdly, "would make the work of maintenance more difficult, require more time," and add to the cost of operation.

The defendants, on the other hand, offered Bertram O. Vannort, a consulting electrical engineer, who gave it as his opinion that the plaintiff's lines could be repaired and maintained "over the theater building where it is presently located"; and while not as conveniently done with the building there, "in my opinion the building in itself does not present any great difficulty." The witness explained in detail how power lines, which run over and above buildings, are maintained and kept in repair. "A crew properly organized and under proper supervision would not have any trouble with the problem of maintenance."

The jury returned the following verdict:

"Does the erection and use of defendant's theatre building constitute an interference inconsistent with plaintiff's easement, as alleged in the complaint? Answer: No."

From judgment on the verdict, plaintiff again appeals, assigning as its principal exception the refusal of the court to render judgment in its favor on the pleadings or to direct a verdict of like tenor.

The defendants have paid little heed to this exception, assuming that under the law of the case the matter was settled on the former appeal and is now *res judicata*, binding alike on the parties and the courts. The trial court so understood it, just as some members of this Court still understand it.

Surprisingly, however, the majority now completely ignores the decision of the second question on the former appeal, and says: "The question then debated was whether plaintiff's easement acquired by judgment in condemnation proceedings was valid and subsisting as against subsequent purchasers from the original owners of the land."

If this were all that the Court decided on the former appeal, the judgment of nonsuit could not have been reversed, for the burden was on the plaintiff to show an inconsistent use by the defendants before it could ask for a ruling in its favor. On this further showing, which was not materially different from what it is on the present record, the Court said the issue of fact was for the jury.

Compare the Court's present statement with the above quotation from the former opinion and note how consistency and the "law of the case" have been abandoned. While this Court can overrule its previous decisions, it is not at liberty to ignore the law of the given case, once established. *Newbern v. Tel. Co.,* 196 N. C. 14, 144 S. E. 375.

Can it be that the defendants are bound by our former opinion and the plaintiff is not? Is the principle of equality or the rule of fair play no longer applicable as between the present parties litigant? Is this Court not to respect its own established "law of the case"? What becomes of our repeated decisions on the subject? It will not do to ignore these questions nor to answer them with sophistry or specious reasoning. Having gone to great expense to comply with our former decision, the defendants are entitled to know why such compliance should now mean their undoing. "It was the duty of the judge below to follow the ruling made here," *Pretzfelder v. Ins. Co.,* 123 N. C. 164, 31 S. E. 470, just as it is our duty to honor the law of the case, rather than to seek to evade it. Where the subsequent hearing is in substantial conformity to the opinion of this Court, the same questions may not again be presented on a second appeal. *Bradsher v. Cheek,* 112 N. C. 838, 17 S. E. 533. "It is not allowable to rehear a cause by raising on a second appeal the same points decided on a former appeal"—Headnote, *Kramer v. R. R.,* 128 N. C. 269, 38 S. E. 872.

The plaintiff cites one case, *Collins v. Alabama Power Co.,* 214 Ala. 643, 108 So. 868, 46 A. L. R. 1459, which, it is said, is the only case in the books dealing with the erection of a building on a right of way beneath electric transmission lines. There is also cited a second case, *Kesterson v. California-Oregon Power Co.,* 114 Ore. 22, 228 P. 1092, which involved the piling of lumber on the right of way of a power company.

Both of these cases are distinguishable by reason of different fact situations and variant provisions in the easements. Both affirm the thesis, however, that the language of the particular easement governs in the determination of the respective rights of the parties. It is the general

law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument. *Jones v. Casstevens,* 222 N. C. 411, 23 S. E. (2) 303; *Whitley v. Arenson,* 219 N. C. 121, 12 S. E. (2) 906.

It is to be observed that the easement in question, not only declares the rights of the petitioner, but those of the defendants as well. When mutual rights and obligations are set out in a single instrument the rule of reasonable enjoyment and forbearance applies. 28 C. J. S. 771. Mutual accommodation is the yardstick by which the rights of the parties are to be measured. Under this rule and the conflict in the evidence, the jury has determined that both parties are within their stipulated rights according to the terms of the subject easement.

The easement grants the plaintiff the right to build, maintain, inspect and keep in repair its transmission lines over the lands of the defendants, and at the same time provides that, except for such purposes, the grantee "shall not interfere with the rights of the defendants." Then follows immediately the provision that the "defendants shall have full power and right to use the lands over which the easement and right of way is condemned for any and all purposes not inconsistent with said easement of petitioner, its successors and assigns." Note the language, "for any and all purposes not inconsistent with said easement." Inconsistent use is the restraint against the defendants, while interference is the prohibition against the plaintiff. An inconvenient use is not necessarily an inconsistent one. Undoubtedly the reservation in favor of the owners of the land reduced the price of the easement at the time of its acquisition; and if the plaintiff would now take a more liberal grant, or a less restricted right, it is but meet that just compensation should be the *quid pro quo.* The evidence of the defendants clearly shows, and the jury has found, that defendants' use of the lands is not inconsistent with plaintiff's easement. For this Court to hold otherwise as a matter of law is to reform the easement, not to interpret it, and this in direct conflict with its previously established law of the case.

It should be noted that we are not dealing with the general law of easements, but with a judgment in condemnation containing special provisions, which establish reciprocal rights and restraints *inter partes,* and the law of the case as heretofore declared.

Moreover, the evidence is not all one way on the vital issue in the case, and it is the rule with us that an affirmative finding may not be directed in favor of the party having the burden of proof, where there is evidence to support a contrary inference. *Forsyth v. Oil Mill,* 167 N. C. 179, 83 S. E. 320; *Mfg. Co. v. R. R.,* 128 N. C. 280, 38 S. E. 849; McIntosh on Practice, 632. "It is rarely, if ever, permissible for the court to direct a verdict in favor of a party upon whom rests the burden of proof." *Barrett v. Williams,* 217 N. C. 175, 7 S. E. (2) 383.

R. R. v. Manufacturing Co.

So, notwithstanding the special provisions and restraints of the easement, the "law of the case" and the conflict in the evidence, and despite the adverse finding of the jury, a third trial is ordered to the end that the plaintiff may again move for a directed verdict in its favor. What becomes of all the decisions at variance with such procedure? There is none to support it. The case is *sui generis* from a procedural standpoint. Its nearest parallel would seem to be *Williams v. McLean,* 221 N. C. 228, 18 S. E. (2) 864, but even that case is a far cry from this one.

The trial having been conducted in accordance with our former opinion, my vote is for an affirmance.

WINBORNE and SEAWELL, JJ., concur in dissent.