518

**UNITED STATES of America**

v.

**NORMAN LUMBER COMPANY,**
**E. W. Bruton, et al.**

**Civ. No. 252–R.**

United States District Court,
M. D. North Carolina.

Jan. 11, 1955.

Edwin M. Stanley, U. S. Dist. Atty.,
Greensboro, N. C., for plaintiff.

Jones & Jones, Rockingham, N. C., and
Pittman & Webb, Rockingham, N. C., for
defendants.

HAYES, District Judge.

This suit involves the title of the United States to Tract No. 71–A known as the Mary Watkins tract of land in Montgomery County, containing 89.60 acres, lying immediately West and adjoining the E. J. Bruton land, and also the question whether the United States is entitled to recover the value of timber removed therefrom by Norman Lumber Company, who purchased the timber from the E. J. Bruton heirs.

A final decree in the condemnation proceeding was entered on December 31, 1936, in the United States District Court for the Middle District of North Carolina, in a condemnation proceeding entitled "United States of America v. 1053.2 acres of land in Montgomery County,

North Carolina, Mrs. Mary Ann Watkins, et al" and being Law No. 64 on the Rockingham docket. It is conceded that one of the tracts of land described in the petition for condemnation is the tract therein referred to as 71–A and described as the Mary Ann Watkins Tract containing 89.60 acres, which lies on the Western end of a 356 acre tract of land known as the E. J. Bruton boundary. The proceeding in condemnation was to acquire title by the United States to all of the lands therein described, two of which were designated as owned by Mary Ann Watkins, and the tracts of land especially the tract herein involved, were specifically described by metes and bounds, and the Eastern boundaries of the tract called for corners, lines, courses and distances from the Southern end of said Tract to the Northern end thereof as being corners, courses and distances common to the E. J. Bruton land. Since that time E. W. Bruton, one of the heirs of E. J. Bruton, acquired title from the other heirs of E. J. Bruton to the original 356 acre E. J. Bruton tract, which includes the Mary Ann Watkins Tract No. 71–A, but all the other heirs at law sold the timber on the land to Norman Lumber Company in 1951. During the early part of 1952 the Norman Lumber Company cut timber on this tract of land and being notified by officers of the United States that the timber was cut from the land of the United States, the Norman Lumber Company paid the Department of Agriculture the sum of $3339.09 representing the stumpage that had been removed, but in December, 1952, the defendant again went upon the land and proceeded with cutting the timber on this tract, which resulted in the institution of this suit and the issuance of a restraining order, but at the hearing on the restraining order on January 16, 1953, it was agreed and ordered that the defendant could cut the remainder of the timber upon giving a good and sufficient bond in the sum of $15,000 to pay the value thereof in the event it should be determined that it was not the rightful owner, and· on said date the heirs of E. J. Bruton were made parties defendant to this suit.

The litigation and controversy here have their origin in the failure to have the condemnation judgment cross indexed on the judgment docket in Montgomery County, the defendants contending that the condemnation proceeding was not binding against the heirs of E. J. Bruton, but if their position is untenable, that nevertheless the Norman Lumber Company having purchased the land and paid a valuable consideration, and having recorded its deed, was the purchaser for value and without notice on account of the failure of the judgment to be indexed and cross indexed in Montgomery County.

 The record in the condemnation proceeding shows beyond controversy that E. J. Bruton and the heirs of E. J. Bruton were made parties to the condemnation proceeding, that summons in person was served on E. W. Bruton, and by publication on the other heirs. Montgomery County is one of the counties located in the Middle District of North Carolina, where the condemnation proceeding was determined, and the Bruton heirs having been made parties to the condemnation suit by way of summons and service, are chargeable with all the knowledge they would have acquired had they appeared and examined the records in the case and made the necessary effort to learn the truth of the matters affecting their interests. United States v. 8,557.16 Acres of Land in Pendelton County, D.C.W.Va., 11 F.Supp. 311; Baltimore Traction Co. v. Baltimore Belt R. Co., 151 U.S. 137, 14 S.Ct. 294, 38 L.Ed. 102; Blankenship v. English, 222 N.C. 91, 21 S.E.2d 891; McLain ·v. Shenandoah Life Insurance Co., 224 N.C. 837, 32 S.E.2d 592.

 Condemnation suits are entirely different from a suit or action in personam to recover personal judgment, North Laramie Land Co. v. Hoffman, 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953, it is a proceeding in rem to take title to·the real estate regardless of who may assert

an interest therein, and all persons duly and properly notified to appear and assert their claims are bound by the subsequent proceedings, and even failure to give notice to all persons having an interest in the land does not void the proceeding. Harkins v. City of Asheville, 123 N.C. 636, 639, 31 S.E. 853.

■ The petition in the condemnation suit describes by metes and bounds Tract 71–A and designates the beginning corner as a stake witnessed by a Pine, White Oak and Dogwood, common to R. M. Bruton and E. J. Bruton, and continues five additional calls and corners common to E. J. Bruton specifying the crossing of Clark's Creek. In addition to calls by metes and bounds, a blue print map is attached to the petition as Exhibit B–1. Had the defendants appeared and read over the petition, they could have easily discovered, as they now discover, that this tract of land is a part of the land which they now claim. The defendants contend that since they were referred to at one place in the summons as adjoining owners, and the reference was made to the Old Lawrenceville Road, that they were misled. The effect of this attitude would be to excuse the adjoining landowners from the effect of a condemnation judgment and virtually nullify the importance of making them parties. All persons, whether owners or adjoining land owners, are necessary parties in a condemnation suit to divest all persons of the title which they have in the boundary condemned, regardless of whether it is a dispute of boundary line or ownership of the property. The whole trend of the law, both State and Federal, is to the effect that a condemnation proceeding is in rem and all persons who are properly notified to appear are bound by the proceedings therein. An examination of the file in the original condemnation proceeding clearly discloses ample information to put these defendants on notice that the United States is taking the tract of land which the defendants now contend belongs to them.

■ The Norman Lumber Company contends that this condemnation judgment should have been recorded in Montgomery County and cross indexed, and since it acquired its title for a valuable consideration by deed duly recorded, that it is an innocent purchaser for title from the Brutons, who were parties to the condemnation suit.

The United States District Court for the Middle District of North Carolina, undoubtedly had jurisdiction to entertain a suit by the United States to condemn land located anywhere within the Middle District of North Carolina. It had jurisdiction of the rem and of all the parties. It rendered its judgment which is duly recorded in the office of the Clerk of the United States District Court for the Middle District of North Carolina, and indexed as to each defendant herein except Norman Lumber Company, which was not a party at that time and has acquired its interest subsequent thereto. The judgment has been docketed in Montgomery County, but not cross indexed as to the Brutons. A great number of persons were named in the summons and judgment and it is indexed against one or more of them, et al., but not including the Brutons. It is necessary, therefore, to determine whether the cross indexing of the judgment in Montgomery County was necessary to protect the United States against the claim of Norman Lumber Company as an innocent purchaser.

There could be no doubt about the fact that the United States became the owner of this Tract of land when the judgment was signed, and the damages paid into the Court, and having acquired title to the property and become the owner thereof, it cannot be divested of its title thereto except under laws duly enacted by Congress, and it cannot be deprived of its ownership to the property in any other manner. I am unable to find any law wherein the Congress has authorized an adverse claimant to come in and take property away from the United States because of the failure on its part to have a condemnation judgment cross indexed

as to each person in the county where the land lies, and no authority has been cited to me which sustains this position. The defendant Norman Lumber Company contends that a judgment of the United States District Court under the Conformity Act G.S.N.C. § 1–237, must be docketed in the county like a judgment of the Superior Court in order to become a lien on the property located in the county, which is true, but a careful consideration of the Conformity Act in relation to docketing judgments of Federal Courts and of the Registration Statute of North Carolina, G.S. § 47–18, does not sustain the position that a condemnation judgment in favor of the United States must be recorded in the county where the land lies, and cross indexed in order to protect its ownership in land that it has acquired. G.S.N.C. § 47–27, subd. 3. The Government stands in a position quite different from an individual, and if the statute normally applies to an individual, it may not be applicable against the United States. There are many instances in which the United States might be deprived of its property contrary to the laws of the United States. The position of the defendant Lumber Company seems to be that the law in North Carolina with respect to condemnation judgment and the Registration Acts is in accord with the dissenting opinion of Chief Justice Stacy, in the case of Carolina Power & Light Co. v. Bowman, 228 N.C. 319, 45 S.E.2d 531; however, the majority opinion in that case specifically holds that it is not necessary to register a condemnation judgment and cross index it in the office of the Register of Deeds.

It is true that it imposes a severe hardship on attorneys undertaking to examine titles, to have to inquire at the office of the Clerk of the United States District Court before he can be sure that there is no condemnation judgment entered there which is not recorded and cross indexed in the county where the land lies, but this inconvenience cannot outweigh the public interest in safeguarding and protecting the property of the United States in accordance with the laws of the United States. The United States cannot always have watchers present to observe trespassers who may go upon public lands and commit ,waste, while the private owner does have an opportunity to keep an eye on his property. The enormous amount of land owned by the United States for various Governmental purposes is such that its disposition cannot be effected in any manner except under a clear mandate of the law duly enacted by Congress. The defendant in this case is very fortunate to escape with the stumpage value of the timber it has wrongfully removed from the land of the United States. If there had not been a stipulation as to the amount of the damages, the rules set forth in E. E. Bowles Wooden-Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230, would have necessitated a different mode in ascertaining the damages for which the defendant would have been answerable.